**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case No. 21-cr-129 (ABJ)** |
| **v.** | : | |
| | : | |
| **GABRIEL AUGUSTIN GARCIA,** | : | |
| **also known as "Gabriel Agustin Garcia,"** | : | |
| | : | |
| **Defendant.** | : | |

**UNITED STATES' RESPONSE TO DFENDANT'S**
**MOTION TO COMPEL DISCOVERY**

The United States of America, by and through its attorney, the Acting United States Attorney for the District of Columbia, hereby files this response to defendant Gabriel A. Garcia's "Motion to Compel Discovery," filed though counsel (ECF No. 27). In his motion, the defendant requests all evidence regarding U.S. Capitol Police ("USCP") officers who have been investigated, suspended, or reprimanded for their conduct during the January 6, 2021 Capitol Breach. The defendant also requests all video, photos, or images capturing USCP officers acting in any manner which would tend to indicate that people were allowed on U.S. Capitol grounds or inside the U.S. Capitol building. Finally, the defendant requests all documents, statements, agents' reports, and tangible evidence favorable to him on the issue of guilt and/or which affects the credibility of the government's case.

The defendant first made this discovery request on May 13, 2021. In addition to the requests noted in his motion to compel, the defendant requested a list of the officers suspended for various reasons stemming from their behavior or actions on January 6 and the reasons for their suspensions. The defendant asked for a status update on July 13, 2021. The government responded to both the May and July requests, indicating that it did not yet have the information and that it would follow-up once available. For the reasons set forth below, the government believes it is

appropriate to hold the defendant's motion to compel in abeyance until the defendant has received and had a chance to review the requested materials and determine what, if anything, he believes remains outstanding.

## FACTUAL BACKGROUND

The defendant is charged in an eight-count Indictment for offenses committed at the U.S. Capitol Building on January 6, 2021. In short, the defendant took part in an aggressive confrontation with USCP officers in the Crypt area of the U.S. Capitol Building wherein the defendant positioned himself at the front of the police line and incited the crowd behind him, saying things such as "storm this shit" between shouting at the officers and calling them "fucking traitors." After the crowd breached the line of officers, the defendant moved to the Rotunda, where he asked "Nancy" to "come out and play."

## STATUS OF DISCOVERY IN THIS CASE

The government has already disclosed several videos capturing the defendant's conduct on January 6, 2021. *See* Preliminary Discovery Letter, ECF No. 26. Recently, the government also disclosed a full copy of the defendant's cell phone extraction, including native files. Currently, the government is preparing another batch of discovery related specifically to the investigation of the defendant's conduct.

## STATUS OF VOLUMINOUS DISCOVERY REGARDING CAPITOL BREACH AND DEFENDANT'S SPECIFIC REQUESTS IN HIS MOTION TO COMPEL

The government has taken a very expansive view of what may be material or potentially exculpatory and thus discoverable in Capitol Breach cases. Defense counsel in Capitol Breach cases have made requests including any and all information that captures an individual defendant's conduct or statements; shows people "peacefully walking around the Capitol"; or suggests that a member (or members) of law enforcement allowed people to enter or remain in the Capitol or on

2

restricted grounds, acted friendly or sympathetic to the rioters, or otherwise failed to do their jobs. Of course, there may be additional types of information a defendant may consider material or exculpatory, but since the government does not know the defense theory in any particular case, it is impossible to for the government to determine what other types of information a defendant may believe to be material.

To the extent the type of information described above may exist, it may be interspersed among the voluminous sets of data referenced above. Given the volume of material, and because "[d]efendants are in a better position to determine what evidence they believe is exculpatory and will help in their defense,"[1] it is our intent to provide the defense with all data that may contain such information, but in a manner that will facilitate search, retrieval, sorting, and management of that information.

Along those lines, we have developed and begun implementing a plan to use two primary platforms to process and produce discoverable voluminous materials: one for documents (e.g., items such as law enforcement investigation files and business records) and one for digital materials (e.g., video footage). These two platforms have frequently been referred to as our "database" although, in fact, they are two separate information repositories hosted by unrelated vendors.[2] Deloitte is hosting a Relativity database, or "workspace," for the government to manage

---

[1] *United States v. Meek,* No. 19-cr-00378-JMS-MJD, 2021 WL 1049773 *5 (S.D. Ind. 2021). *See also United States v. Ohle*, No. S3 08 CR 1109 (JSR), 2011 WL 651849 *4 (S.D.N.Y. 2011)(not reported in F.Supp.2d)("placing a higher burden on the Government to uncover such evidence would place prosecutors in the untenable position of having to prepare both sides of the case at once. Indeed, the adversarial system presumes that the defense will be more highly motivated to uncover exculpatory evidence, so if anything the onus is on defense counsel to conduct a more diligent search for material potentially favorable to his client. This is especially true considering that, if exculpatory evidence exists, the defense is in the best position to know what such evidence might be and where it might be located.")

[2] We are working collaboratively with the Federal Public Defender ("FPD") leadership and electronic discovery experts, including Sean Broderick, the National Litigation Support Administrator for the Administrative Office of the U.S. Courts, Defender Services Office, to ensure that Federal Public Defender offices nationwide that are working on Capitol Breach cases, counsel that are appointed under the Criminal Justice Act, and retained counsel for people who are financially unable to obtain these services will have access to the same platforms, including technological

and produce documents.  Relativity is a cloud-based eDiscovery platform that offers functionalities including document organization, review, production, and analytics within a single environment, and is an industry leader in eDiscovery hosting.

### *Documents, Including Allegations of Law Enforcement Misconduct*

A Relativity workspace will allow Capitol Breach defense teams to leverage Relativity's search and analytics capabilities to search the voluminous documents we expect to produce for information they believe may be material to their individual cases.  Defense teams will be able to perform key term searches and metadata searches across hundreds of thousands of documents in the defense workspace. Further, in conjunction with any staff they designate to support their workspace, they will be able to design coding panes that allow them to "tag" items received in discovery as they deem relevant to their cases, e.g., by location ("Lower West Terrace") or defense theories of the case ("Police Let Defendants In"); and then generate search reports based on the results associated with a particular tag or multiple tags.

We have already populated our Relativity database with over 30,000 records from the USCP and USCP reports related to allegations of misconduct by law enforcement in connection with the events of January 6, 2021. We are currently using our Relativity platform to process materials related to allegations of police misconduct and plan to make those reports available within approximately the next few weeks. With this production, defense will get the reports that document the investigation of alleged misconduct. The officer names will be redacted. The findings will not be redacted. We are prioritizing these materials and Metropolitan Police Department use-of-force investigation files because many defendants have requested them.

---

functionality commensurate to that available to the government, for the purpose of receiving and reviewing discoverable materials.

Of course, Federal Bureau of Investigation ("FBI") files account for the majority of documentary evidence that we will need to ingest and review. The FBI estimates that there are approximately 750,000 investigative memoranda and attachments in its files associated with the Capitol Breach investigation. We intend to organize, deduplicate, and produce these materials as appropriate, using all of Relativity's tools to do so as quickly as possible.

The process of populating Relativity with potentially discoverable material, all in varied formats and from different sources, is complicated. It is *not* like copying and pasting a file, or even like duplicating a hard drive. Before the hundreds of thousands of investigative files at issue here are ever loaded to Relativity, they must be meaningfully organized into folder structures that will make sense to reviewers and recipients. The materials must also be quality-checked, e.g., we must ensure that we have the password for protected documents, that the documents were provided in a format that will open, and that we remove irrelevant software and system files that would only cloud the workspace and confuse reviewers. After materials are loaded to Relativity, we must customize the manner in which they are displayed so as to be meaningful to reviewers who will make discoverability determinations and apply appropriate redactions and sensitivity designations. Not all documents are created equal, e.g., financial records and forensic cell phone search reports cannot meaningfully be displayed in the same way.

All of these processes will be assisted by leveraging Relativity's tools as much as possible, such as by using keyword searches to identify items that must be excluded or redacted; and deduplication tools to recognize documents that have already been processed so that they are not analyzed or reproduced multiple times. Although these processes are time-consuming, they are necessary to avoid production of unorganized data dumps, unreadable files, and unusable

databases; or a failure of the government to take adequate steps to prevent both victims and defendants' private information from being shared with hundreds of defendants.

### *Electronic Evidence, Including Videos and Images*

Relativity was primarily designed as document review platform and not to manage terabytes of digital evidence. Although it is technologically possible to view and share video evidence within Relativity, in this case, the volume of video would significantly reduce Relativity's performance speed.

Accordingly, we will use evidence.com as a platform to manage, review, and share digital media evidence.  Evidence.com is a cloud-based digital evidence management system designed by Axon Enterprise, Inc. ("Axon"), an industry leader in body-worn-camera systems.  As recently as Saturday, August 21, 2021, we consulted with representatives from Axon about our plan and we expect our contract with Axon will be modified expeditiously.

We have already migrated over 2,900 body-worn-camera videos totaling over 2,300 hours (nearly 100 days) into our instance of evidence.com. We expect to be able to share this footage with the FPD within approximately the next few weeks.[3] Before we can share voluminous video footage with FPD, we must also ensure that the footage is adequately protected. Based on a review of the body-worn-camera footage conducted by our Office, the footage displays approximately 1,000 events that may be characterized as assaults on federal officers. As these officers now, or in the future may, qualify as victims under the Crime Victims' Rights Act, they have the "right to be reasonably protected from the accused" and the "right to be treated with fairness and with respect of the victim's dignity and privacy." 18 U.S.C. §§ 3771(a)(1) and (8).

---

[3] Axon refers to a singular environment of evidence.com as an "instance." The government has agreed to fund a defense instance of evidence.com and to provide the necessary licensing services through Axon. This instance will be managed and administered by FPD.

When we share the footage, we also intend to share information we have developed that will help facilitate efficient defense review of body-worn-camera footage.  For example:

- Individuals in our Office who reviewed all the body-worn-camera footage in our instance created a spreadsheet that identifies footage by agency, officer, video start time, a summary of events, and location of the camera in 15-minute increments. The locations are defined in zone map they created. We will share our zone map and the spreadsheet with the legal defense teams, subject to adequate protection.

- We obtained from MPD Global Positioning Satellite ("GPS") information for radios that may be of assistance in identifying the location of officers whose body-worn-camera footage is relevant to the defense. We will share this information with the legal defense teams, subject to adequate protection.

We will continue to ingest video evidence into evidence.com on a rolling basis, and to produce it regularly.  As evidence.com was designed to function in coordination with body-worn-cameras designed by Axon, ingesting body-worn-camera footage into our instance was fairly simple.  Other footage will need to be converted from proprietary formats before it can be ingested into evidence.com, and so processing will take longer.

At this time, the FBI is in the process of transmitting Capitol surveillance footage for ingestion into evidence.com. Because of the size of the footage, it will take several weeks to receive and ingest the footage. Based on our current understanding of the technical complexities involved, we expect to start rolling productions from 7,000 hours of footage that the USCP provided the FBI within approximately the next four weeks.  An additional 7,000 hours of footage is not relevant to this case and, therefore will not be produced.

## CONCLUSION

In sum, while we have not resolved every contractual or technical detail, and while our discovery plan continually evolves to address issues as they arise, we are making substantial progress in our diligent efforts to provide the defense comparable discovery review platforms for both documents and digital media, to populate those platforms, and to use alternative means to provide the most relevant discovery without delay.

Given the representations above, the government respectfully submits that holding the defendant's motion to compel (ECF No. 27) and motion for a hearing (ECF No. 28) in abeyance reserves the defendant's discovery requests while also giving the government additional time to make the discovery available. The government will be prepared at the September 14, 2021 status hearing to provide the Court with an update regarding our discovery efforts, specifically as those efforts relate to the defendant's motion to compel.

Respectfully submitted,

CHANNING D. PHILLIPS
ACTING UNITED STATES ATTORNEY
D.C. Bar No. 415793

By:    */s/ Angela N. Buckner*
Angela N. Buckner
DC Bar #1022880
Assistant United States Attorney
United States Attorney's Office
555 Fourth Street, N.W.
Washington, DC 20530
Phone: (202) 252-2656
Angela.Buckner@usdoj.gov