UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | |
| | ) | Crim. Action No. 21-0129 (ABJ) |
| GABRIEL AUGUSTIN GARCIA, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Pending before the Court is defendant's third Motion to Modify Pretrial Release Conditions of GPS Monitor and Curfew Due to Change in Circumstances [Dkt. # 30] ("Third Mot."). Once again, the defendant asks the Court to relieve him of the obligation to wear a GPS monitor, which he finds embarrassing and which he asserts poses a danger in his line of work.[1] The government opposes the motion. *See* Gov't's Opp. to Third Mot. [Dkt. # 32] ("Opp."). After considering all of the factors under 18 U.S.C. § 3142(g) that led to the imposition of the condition in the first place, including the serious nature of the charges; the fact that the motion does not identify any change in circumstances; and the Court's receipt of information from Pretrial Services that casts doubt on defendant's candor, the Court will **DENY** the motion in its discretion.

## BACKGROUND

On January 6, 2021, thousands of people took part in a deadly and destructive attack on the United States Capitol in an effort to disrupt the certification of the results of the 2020 Presidential

---

1  While defendant has also submitted that the ankle monitor makes climbing a ladder difficult, Third Mot. at 2, he has not substantiated that assertion or demonstrated that any danger cannot be obviated through other means.

1

Election. They forced their way into a federal building that was closed to the public on that day, requiring many elected officials and their staff – fearing for their safety – to flee or shelter in place, and injuring over one hundred law enforcement officers.[2] As the D.C. Circuit has emphasized, "[i]t cannot be gainsaid that the violent breach of the Capitol on January 6 was a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021).

This defendant has been charged in a six-count indictment related to his conduct on January 6. *See* Ind. [Dkt. # 1]. According to the complaint filed by Special Agent Michael F. Biscardi, defendant took videos of himself that day. Statement of Facts [Dkt. # 1-1] ("SOF") at 4. In one video, defendant turned the camera on himself and noted that "We just went ahead and stormed the Capitol. It's about to get ugly." SOF at 4. The agent described the video as "depict[ing] an aggressive confrontation with U.S. Capitol Police officers, who are trying to prevent the crowd from advancing." SOF at 3–4. During the confrontation, defendant is heard shouting at police officers attempting to defend the building: "You fucking traitors! You fucking traitors! Fuck you!" SOF at 4. The agent adds that defendant was "holding a large American flag, which he drops into the skirmish in an apparent attempt to assist the individuals who are struggling with the USCP officers." SOF at 4.

During the standoff, defendant got so close to the officers "that their names are clearly visible in the video." SOF at 4. While in that position, he "yell[ed]" that "You ain't stopping a million. You ain't gonna hold a million back today. Sorry. Ain't holding a million of us. And there's more!" SOF at 4–5. Shortly after, he shouted "Storm this shit!" two times, as well as

---

[2]   *See Examining the U.S. Capitol Attack*, Committee on Homeland Security and Governmental Affairs & Committee on Rules and Administration Report (June 8, 2021), https://www.rules.senate.gov/imo/media/doc/Jan%206%20HSGAC%20Rules%20Report.pdf.

shouting "Fucking traitors!" again, asking an officer "How does it feel being a traitor to the country? How does it feel?" and repeating that "You ain't stopping a million of us." SOF at 5. Defendant encouraged the crowd by saying, "Hold the line!" and "Keep 'em coming. Keep 'em coming." SOF at 5. "The last moments captured in the video are of the crowd rushing the USCP officers." SOF at 5.

Surveillance videos then capture a person, alleged to be the defendant, in the Capitol building. SOF at 5. This person "turns the camera on himself, and says, 'Free Enrique,'" which the agent alleges "is an apparent reference to Enrique Tarrio, the Miami-based leader of the right-wing organization the 'Proud Boys,' who was arrested in the District of Columbia on January 4, 2021." SOF at 6 n.3. This person also repeatedly called out for "Nancy," saying "Nancy come out and play" and repeating her name several times. SOF at 6–7. This taunt was presumably meant for Nancy Pelosi, the Speaker of the United States House of Representatives. Throughout the videos, defendant repeatedly shouted, "whose house?" and "our house!" SOF at 4–7.

## DEFENDANT'S MOTIONS

Defendant was arrested on January 19, 2021 in Florida. *See* Arrest Warrant [Dkt. # 18]. On February 11, 2021, he was released on personal recognizance with the following conditions:

- The defendant must not violate federal, state, or local law while on release.

- The defendant must cooperate in the collection of a DNA sample if it is authorized by 42 U.S.C. § 14135a.

- The defendant must advise the court or the pretrial services office or supervising officer in writing before making any change of residence or telephone number.

- The defendant must appear in court as required and, if convicted, must surrender as directed to serve a sentence that the court may impose.

Order Setting Conditions of Release [Dkt. # 9] ("Release Order") at 1. The Magistrate Judge also checked off boxes indicating additional conditions of release; those conditions were that "[t]he defendant must":

- submit to supervision by and report for supervision to the Southern District of Florida/Miami.

- continue or actively seek employment.

- surrender any passport to Pretrial Services Agency for the District of Columbia.

- not obtain a passport or other international travel document.

- abide by the following restrictions on personal association, residence, or travel: Notify PSA in advance of all travel outside of home area Southern District of Florida. Court approval needed for international travel.

- not possess a firearm, destructive device, or other weapon.

- participate in one of the following location restriction programs and comply with its requirements as directed: Curfew. You are restricted to your residence every day from 10:00 pm to 6:00 am.

- submit to location monitoring as directed by the pretrial services office or supervising officer and comply with all of the program requirements and instructions provided.

- stay out of D.C. except for Court, PSA business and meetings with attorney; maintain residence; participate in mental health assessment and treatment; no firearms; and surrender concealed weapons permit.

*See* Release Order at 2.

On February 16, 2021, defendant filed a Motion for Review of Release Order [Dkt. # 10] ("First Mot."). In the motion, he argued that a pocketknife he had attempted to bring into a meeting with his pretrial officer "had a blade less than 3.5 inches, which Florida law expressly excludes as a weapon." First Mot. at 1. He added that there was no presumption of dangerousness in this case, that he has no criminal history, and that he served honorably in the Army for seventeen years. *Id.*

at 3. His request for relief was for "the District Court to remove the GPS and curfew release conditions." *Id.* The motion was largely denied, though Chief Judge Howell did modify his curfew to be from 10:00 pm to 5:30 am, instead of 6:00 am. Min. Entry (Feb. 17, 2021). Defendant remained on "Personal Recognizance with GPS monitoring." *Id.*

On April 15, 2021, defendant filed a motion to travel to Tennessee for work purposes; as part of the motion, he asked for "this District Court to allow him to travel to Nashville, Tennessee without his ankle bracelet and the curfew restrictions." Mot. for Permission to Travel out of the State on May 22, 2021 for Work Purposes [Dkt. # 19] ("Mot. to Travel") at 2. This Court granted the motion in part:

> Defendant may travel to Tennessee for business purposes, and his curfew will be lifted for the duration of that trip, but he must provide his itinerary, including travel arrangements and the address where he will be staying, to Pretrial Services at least two business days before the trip. Defendant also must contact Pretrial Services within one business day of his return. Though defendant will be permitted to travel, he must remain under GPS monitoring for the duration of the trip.

Min. Order (Apr. 21, 2021).

On May 3, 2021, defendant filed another motion asking "this District Court to remove the GPS monitor and curfew conditions. Alternatively, Mr. Garcia requests that only the curfew condition be removed or modified, and that he be allowed to travel within the State of Florida without prior permission from the Court." Mot. to Modify Pretrial Release Conditions of GPS Monitor and Curfew due to Change in Circumstances [Dkt. # 22] ("Second Mot.") at 4–5. Defendant argued that he was "compliant with his curfew and all other pre-trial release conditions" and that "[h]e ha[d] also traveled out of the jurisdiction of the Southern District of Florida, with the Court's permission, without incident." *Id.* at 1. He added that (1) he would like to expand his working hours to help his business remain profitable and pay for his legal bills; (2) "on occasion,

5

the monitor has randomly started beeping loudly around potential clients, immediately followed by an embarrassing phone call from Pretrial Services asking for his exact location"; and (3) "the monitor around his ankle is unsafe and a work hazard; he climbs ladders regularly, and the monitor often gets stuck on the next ladder step when climbing; one time, he almost fell off the ladder." Second Mot. at 2–3.  The Court granted this motion in part:

> [D]efendant is relieved of his curfew.  However, defendant must continue to submit to GPS monitoring.  Defendant may leave the Southern District of Florida with the permission of the Pretrial Services Agency, PROVIDED that he gives the Agency at least two business days of notice before embarking on any travel.  Defendant still may not leave the state of Florida without permission of the Court.

Min. Order (May 5, 2021).

Defendant's most recent motion was filed on September 1, 2021.  Third Mot.  It asks for "this District Court to remove the GPS condition."  *Id.* at 3.  Defendant listed as justification for the modification that he was "compliant with all pretrial release conditions" and that "[h]e ha[d] also traveled out of the jurisdiction of the Southern District of Florida, with the Court's permission, without incident."  *Id.* at 1.  He added that (1) he is not a flight risk and has no criminal history; (2) "the monitor has randomly started beeping loudly around potential clients, immediately followed by an embarrassing phone call from pretrial services asking for his exact location"; and (3) "[t]he monitor around his ankle is unsafe and a work hazard; he climbs ladders and the GPS monitor often gets stuck on the next ladder step when climbing; one time, he almost fell off the ladder."  *Id.* at 2–3.

## LEGAL STANDARD

Under the Bail Reform Act, a judge must release the defendant on personal recognizance or upon the execution of an unsecured appearance bond "unless the judicial officer determines that

such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b). The condition that the defendant submit to GPS monitoring is not a required condition of release under the statute; section 3142(b) requires only the condition that the defendant not violate any federal, state, or local law, and, if appropriate, that he cooperate in the collection of DNA. *Id.*

Pursuant to 18 U.S.C. § 3142(c), though, if the judicial officer determines that the release described in subsection (b), that is, release on personal recognizance, or with an unsecured appearance bond, will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community:

> such judicial officer shall order the pretrial release of the person –
>
>> (A) subject to the condition that the person not commit a Federal, State, or local crime . . .; and
>>
>> (B) subject to the least restrictive further condition, or combination of conditions, that such judicial officer determines will reasonably assure the appearance of the person as required and the safety of any other person and the community, which may include . . .
>
> [any of the thirteen possible conditions listed] and any other condition that is reasonably necessary.

18 U.S.C. § 3142(c)(1)(B).

Finally, "[a]s the D.C. Circuit has noted, the mere passage of time, without a substantial change in the 'underlying reasons for this court's prior decisions' regarding pretrial [conditions] is generally not sufficient to warrant reconsiderations." *United States v. Bikundi*, 73 F. Supp. 3d 51, 55 (D.D.C. 2014), quoting *United States v. Ali*, 534 Fed.Appx. 1, 2 (D.C. Cir. 2013) (per curiam).

## ANALYSIS

Defendant has asked, several times, that the condition of GPS monitoring be removed, and three different judicial officers in this district have determined that the monitor is necessary. The third motion simply repeats, word for word, what the Court already considered when defendant filed his second motion. So this motion presents no new information; while the Court understands that the ankle bracelet is uncomfortable and embarrassing, and that defendant feels strongly that it is an unnecessary imposition, simply copying and pasting the arguments into a new motion is not sufficient to qualify as changed circumstances that justify a different outcome.

The condition of GPS monitoring is justified by the allegations against defendant and the need to protect the community and assure defendant's future appearances in court. Defendant is not one of the Capitol Riots defendants who merely walked into the building and walked out. He is alleged to have berated and threatened officers, shouted taunts at members of Congress, and encouraged others in their attempts to rush the building. His statement, "free Enrique," SOF at 6, takes on additional meaning now that the government has alleged that defendant is a member of the Proud Boys organization, and that he and other Proud Boys took part "in at least one additional hostile demonstration in Washington, D.C." before the Capitol Riots. Opp. at 2. All of these circumstances give rise to legitimate concerns about the defendant's likelihood to engage in similar acts if the opportunity presented itself in the future. As the government has noted, *id.* at 5, one of defendant's conditions of release is to stay away from the District of Columbia, and the GPS monitoring is reasonably necessary to ensure compliance with that condition.

On top of those concerns, the Court has received a report from the Pretrial Services Agency stating that defendant returned from his "work" trip to Nashville without documentation of his business meetings and/or purchases, though he was instructed to procure and preserve that

documentation. *See* Informational Memorandum [Dkt. # 24-1] at 2–3. In his motion to travel, defendant had represented that he was "currently attempting to acquire supplies for his business[,]" and that this "require[d] him to visit the facilities of American Builders & Contractors Supply Co., Inc. located at 1818 Elm Hill Pike Nashville, TN 37210." Mot. to Travel at 1. GPS monitoring revealed that defendant "arrived in the vicinity of the American Builders and Contractor's Supply Company, Incorporated at 11:06 am. He left that location at approximately 11:08 am, before arriving at Nashville International Airport at approximately 11:15 pm." Informational Memorandum at 3. The Pretrial Services Agency submits that "the GPS records revealed he was inside the business for less than five minutes during his reported 'work' related travel." *Id.*

So defendant's representations that he has traveled out of jurisdiction "without incident" and "has remained compliant" with his pretrial release conditions are not particularly persuasive. *See* Second Mot. Instead, it appears that the defendant may have been disingenuous with both the Court and Pretrial Services. Therefore, the Court finds that continued use of GPS technology is necessary to ensure that defendant does not engage in unauthorized travel and otherwise complies with his conditions of release, and that the existing set of conditions continue to be the least restrictive means to ensure the defendant's appearance and the safety of the community while enabling him to continue to manage his business operations.

For all of these reasons, defendant's motion is **DENIED**.

*[signature: Amy B Jackson]*

AMY BERMAN JACKSON
United States District Judge

DATE: September 13, 2021