**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case No. 21-cr-129 (ABJ)** |
| **v.** | : | |
| | : | |
| **GABRIEL AUGUSTIN GARCIA,** | : | |
| **also known as "Gabriel Agustin Garcia,"** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S**
**MOTION FOR BILL OF PARTICULARS**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby files this response to defendant Gabriel A. Garcia's (the "Defendant") motion for a bill of particulars and memorandum of law, filed though counsel (ECF No. 49, hereinafter "Def. Mot."). The Defendant moves under Federal Rule of Criminal Procedure 7(f) for a bill of particulars and essentially makes two requests (1) the "nature of all events, behavior, and actions upon which the prosecution will rely" to prove Counts Four and Five and that differentiate Counts Four and Five from Counts One and Two; and (2) as to Count Two, "the nature of any statements (written, spoken, or adopted), events, actions, behavior, and actions upon which the prosecution will rely on to establish or prove Mr. Garcia demonstrated the heightened mens rea of 'corrupt' intent." *See* Def. Mot. at 1-2.

Whether a bill of particulars is appropriate lies within this Court's "sound discretion." *United States v. Mejia*, 448 F.3d 436, 445 (D.C. Cir. 2006) (quotation omitted). Exercising that discretion, this Court should deny the motion.

## PROCEDURAL HISTORY

On February 17, 2021, a grand jury returned a six count indictment charging the Defendant with the following offenses: 18 U.S.C. §§ 231(a)(3), 2 (civil disorder); 18 U.S.C. §§ 1512(c)(2), 2

(obstruction of an official proceeding); 18 U.S.C. §§ 1752(a)(1) and (2) (entering and remaining in a restricted building or grounds and disorderly and disruptive conduct in a restricted building or grounds,); and 40 U.S.C. §§ 5104(e)(2)(D) and (G) (disorderly conduct in a Capitol building and parading, demonstrating, or picking in a Capitol building). *See* ECF No. 11.

On November 10, 2021, the grand jury returned a superseding indictment that updated the language in Counts One (Section 231), Two (Section 1512), Three (Section 1752) and Four (Section 1752). *See* ECF No. 44.

Between on or about February 16, 2021 and July 18, 2021, the government disclosed, among other things, four "Facebook live" videos, six Capitol building security videos capturing the Defendant's entrance into and movements inside of the Capitol building, and two other videos capturing the Defendant in the Crypt area of the U.S. Capitol building. *See* ECF No. 26. Between on or about August 2021 and September 2021, the government disclosed documents from the Office of Professional Responsibility ("OPR"), portions of the FBI file, and the Defendant's phone extraction.[1] *See* ECF No. 37. Additionally, the government has filed discovery letters updating the Court and the Defendant regarding the status of voluminous discovery in this case. *See* ECF Nos. 40, 41. Regarding voluminous discovery, since approximately September 2021, the government has provided access to nine separate productions.

## **FACTUAL BACKGROUND**

The Defendant uploaded to his Facebook account at least two "Facebook live" videos taken from inside of the Capitol building on January 6, 2021. The first video was uploaded at approximately 2:19 p.m. In this video, the Defendant is in an area of the Capitol building called the Crypt. The video is approximately five and a half minutes long and depicts an aggressive

---

[1] The government is working to ensure defense has access to the full extraction report, free from technical issues.

confrontation with U.S. Capitol Police officers ("USCP officers"), who are trying to prevent the crowd from advancing.

Five seconds into the video, the Defendant turns the camera on himself and states, "We just went ahead and stormed the Capitol. It's about to get ugly." Around him, a large crowd chants, "Our house!" The Defendant advances from the rear of the area to the front of the standoff, where USCP officers are positioned in a line. The Defendant continues his advance, shifting around and past individuals so that he is at the very front of the crowd and directly opposite the line of USCP officers. As he maneuvers to the front of the line, the Defendant joins the crowd's chant of, "USA!"

A minute and a half into the video, a man tries to run through the line of USCP officers. The officers respond with force, which prompts the Defendant to shout, "You fucking traitors! You fucking traitors! Fuck you!" As the USCP officers try to maintain control of the man that just rushed the police line, the Defendant yells, "grab him!" seemingly instructing the individuals around him to retrieve the man from USCP officers. The Defendant is holding a large American flag, which he drops into the skirmish in an apparent attempt to assist the individuals who are struggling with the USCP officers.

USCP officers maintain control of the line, holding out their arms to keep the crowd from advancing. At least one USCP officer deploys a baton. The Defendant turns the camera on himself and offers tactical observations regarding the standoff.

The Defendant is extremely close to the USCP officers, so close that their names are clearly visible in the video. The Defendant yells at minute 2:09, "You ain't stopping a million. You ain't gonna hold a million back today. Sorry. Ain't holding a million of us. And there's more!" As the Defendant yells at the line of USCP officers, at least one additional officer deploys a baton in response. The Defendant then yells, "USA! Storm this shit!" As the Defendant yells, the USCP officers take defensive stances, holding up their arms and batons to stop him from advancing.

At minute 3:26, the Defendant, who is still extremely close to the USCP officer line again yells, "Fucking traitors!" He then joins the crowd chanting "Our house!" At minute 3:38, the Defendant states, "You ain't stopping a million of us." He then turns the camera to the crowd behind him and says, "Keep 'em coming. Keep 'em coming. Storm this shit." the Defendant chants with the crowd, "USA!"

Soon after, the Defendant stops chanting and begins speaking off camera with someone near him. At minute 4:28, the Defendant says, "do you want water?" Though unclear, the Defendant seems to be asking the person with whom he is speaking. The Defendant is so close to an officer that, as the camera shifts, the only images captured are those of the officer's chest and badge.

At minute 4:38, the Defendant says to someone, "They're doing their job, man. They're doing their job," seemingly referring to the USCP officers. At 5:03, the Defendant asks an officer, "How does it feel being a traitor to the country? How does it feel?"

The Defendant yells, "Back up! Hold the line!" Shortly thereafter, the crowd begins advancing, breaching the USCP officer line. The Defendant says, "Stop pushing." The last seconds captured in the video are of the crowd rushing the USCP officers.

A video from a separate media source shows the Defendant holding up his phone (as though he is recording) and cheering as he breaches the USCP line.

Capitol building CCTV footage also captures the Defendant. At 2:16 p.m., the Defendant enters the Capitol building through the Senate Wing. By 2:18 p.m., he's in the Crypt. At 2:34 p.m., the Defendant is captured on Rotunda security video. He is holding up a phone and appears to be recording.

A second Facebook video uploaded at approximately 2:34 p.m. shows the Defendant in the Rotunda of the Capitol building. Approximately 35 seconds into the video, the Defendant says

loudly, "Nancy come out and play." As the Defendant continues to record, he shouts "whose house?" At minute 1:10, the Defendant again calls for "Nancy." At the end of the video, the Defendant turns the camera on himself, and says, "Free Enrique."

## ARGUMENT

An indictment need only include "a plain, concise, and definite written statement of the essential facts constituting the offense charged," but a court may, in its discretion, "direct the government to file a bill of particulars" clarifying the allegations in the indictment. Fed. R. Crim. P. 7(c)(1), (f). A bill of particulars "ensure[s] that the charges brought against a defendant are stated with enough precision to allow the defendant to understand the charges, to prepare a defense, and perhaps also to be protected against retrial on the same charges." *United States v. Butler*, 822 F.2d 1191, 1193 (D.C. Cir. 1987). It is not required, however, if the indictment "is sufficiently specific, or if the requested information is available in some other form." *Id.*; *see United States v. Lorenzana-Cordon*, 130 F. Supp. 3d 172, 179 (D.D.C. 2015) (denying motion for bill of particulars and noting that the government had provided extensive discovery that "allows Defendants to adequately prepare for trial").

A bill of particulars "is not a discovery tool or a devise for allowing the defense to preview the government's theories or evidence." *United States v. Ramirez*, 54 F. Supp. 2d 25, 29 (D.D.C. 1999); *see also United States v. Brodie*, 326 F. Supp. 2d 83, 91 (D.D.C. 2004) (same). Rather, a bill of particulars "is intended to give the defendant only that minimum amount of information necessary to permit the defendant to conduct his *own* investigation and not to provide the defendant with the fruit of the government's investigation." *United States v. Sanford Ltd.*, 841 F. Supp. 2d 309, 316 (D.D.C. 2012) (internal quotation marks and citation omitted, emphasis in original). Therefore, a bill of particulars "properly includes clarification of the indictment, not the government's proof of its case." *United States v. Martinez*, 764 F. Supp. 2d 166, 173 (D.D.C.

2011) (internal quotation marks and citation omitted); *United States v. Savoy*, 889 F. Supp. 2d 78, 115 (D.D.C. 2012) (same); *see also United States v. Taylor*, 17 F. Supp. 3d 162, 178 (E.D.N.Y. 2014) (bill of particulars "may not be used by the defense as a fishing expedition or to force the government to reveal all its evidence before trial").

Applying this principle, judges of this Court have consistently denied motions for a bill of particulars where, as here, the motion seeks details about the nature of the government's evidence. Thus, for example, in *United States v. Han*, 280 F. Supp. 3d 144, 149 (D.D.C. 2017), the Court denied a motion for a bill of particulars requesting information about the basis for fraud and tax charges against the defendant, including the precise representations allegedly made by the defendant and the amount of taxes allegedly owed. The Court explained that the requested information had already been provided to the defendant in discovery and elsewhere, and a "bill of particulars is meant to allow a defendant to properly prepare for trial, not provide a method to force the prosecution to connect every dot in its case." *Id.*

Similarly, in *Brodie*, the Court denied a motion for a bill of particulars requesting "the circumstances surrounding the alleged acts" of fraud committed by the defendants as well as "other evidentiary details." 326 F. Supp. 2d at 92. The Court reasoned that the charges set forth in the indictment were "detailed and alleged with particularity" and "the discovery provided by the government has been voluminous," and therefore there was "no reason for any further particularization of the overt acts." *Id.*

Finally, in *Sanford Ltd.*, the Court denied a motion for a bill of particulars regarding the "substance, time, place and date" of allegations regarding falsification of records and other charges against a corporate defendant. 841 F. Supp. 2d at 315. The Court explained that "the general rule in conspiracy cases is that the defendant is not entitled to obtain detailed information about the conspiracy in a bill of particulars." *Id.* at 317 (internal quotation marks and citation omitted).

6

Accordingly, the Court denied the defendant's request for information about the identities of its employees alleged to have participated in the conspiracy and other details about the overt acts charged in the indictment. *Id.* at 317-18.

The same result is appropriate here for three reasons. First, the superseding indictment provides sufficient detail outlining the allegations against the Defendant. *See Mejia*, 448 F.3d at 445 (no bill of particulars required where the superseding indictment identified, among other things, the object of the charged conspiracy, the conspiracy's "time period," the applicable *mens rea*, and locations where conspirators acted). Along with providing a specific date for the alleged conduct, the superseding indictment language tracks closely that of the applicable statutes. Looking at the indictment, the differences between Counts One and Two and Counts Four and Five are clear. The intent language included in Count One (an act was done on January 6, 2021 to obstruct, impede, or interfere law enforcement) and Count Two (corruptly obstruct, influence, and impede an official proceeding) are unique to those counts, regardless of geographic location. Counts Three and Four address, among other things, "restricted" areas. Counts Five and Six specifically address the Capitol building.

Nothing in the superseding indictment's language is vague, unclear, or lacking in specificity, especially considering the Defendant's recorded conduct. If the Defendant believes the government's evidence is insufficient or that the statutes themselves are vague as applied to his conduct, then he should move for the appropriate relief.

Second, the conduct giving rise to the allegations in this case was recorded and has been disclosed to defense. The Defendant has copies of his own Facebook live videos showing his aggressive, obstructionist conduct in the Crypt and Rotunda of the Capitol building. Footage from Capitol building CCTV and other media sources shows his entrance into the building (notably, a restricted area) and his disorderly conduct – his participation in the Crypt breach and his continued

presence in the Rotunda yelling for "Nancy." The "nature of all events, behavior, and actions upon which the prosecution will rely" to prove that the Defendant's conduct violated all these statutes has been disclosed. Similarly, the government has provided sufficient detail of "the nature of any statements (written, spoken, or adopted), events, actions, behavior, and actions upon which the prosecution will rely" to establish that corrupt intent.

Furthermore, as to the larger Capitol breach investigation, the government has made several large, formal discovery productions across the cases, including this one. This process is ongoing and will include, among many other categories, surveillance and open-source videos that defense may deem useful to prepare the Defendant's case. Once the Defendant has received and reviewed the full discovery production, the Defendant will have more than adequate basis to understand the charges against him with sufficient precision to prepare for trial.

Finally, Rule 7(f) does not entitle the Defendant to the granular information he seeks. The government need only provide a "definite written statement of the essential facts constituting the offense charged," Fed. R. Crim. P. 7(c)(1), not enumerate "what separates [the Defendant's] actions from the hundreds of January 6 defendants who were not charged with felony obstruction, but were in the Capitol too" (Def. Mot. at 3). A bill of particulars is not a sword that enables the Defendant to "force the government to reveal all its evidence before trial." *Taylor*, 17 F. Supp. 3d at 178. The indictment is sufficiently specific, and the Defendant, through discovery, is already in possession of the additional information he requests. And so, though the Defendant seeks "statements … upon which the government intends to rely on to establish or prove … 'corrupt' intent" (Def. Mot. at 2), the Defendant has sufficient information to, through his own investigation, identify his *own* statements and conduct.

## **CONCLUSION**

For all these reasons, the Defendant's motion for a bill of particulars should be denied.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

By:   */s/ Angela N. Buckner*
Angela N. Buckner
DC Bar #1022880
Assistant United States Attorney
United States Attorney's Office
555 Fourth Street, N.W.
Washington, DC 20530
Phone: (202) 252-2656
Email: angela.buckner@usdoj.gov

9