## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **1:21-CR-129** |
| | : | |
| **v.** | : | |
| | : | |
| **GABRIEL GARCIA** | : | |
| _____ | / | |

## MOTION TO TRANSFER VENUE AND
## MEMORANDUM OF LAW

COMES NOW, the Defendant, Gabriel Agustin Garcia, by and through his attorneys, pursuant to Rule 21(a) of the Federal Rules of Criminal Procedure, and the Fifth and Sixth Amendments to the United States Constitution, and respectfully moves for a change of venue and asks the Court to move his trial outside the District of D.C. to the Southern District of Florida. Alternatively, Garcia requests a venire from a neighboring district, such as the Eastern District of Virginia or the District of Maryland, is used and the trial still be held in the District of Columbia.

Venue survey data obtained during the month of January 2022 reveals in part:

A. 88% of registered D.C. voters[1] believe that if Garcia went inside the Capitol building on January 6, 2021 ("J6[2]"), he should be convicted of obstruction of justice and civil disorder;

B. 73% of respondents believed that anyone who merely entered the Capitol building on J6 is guilty of insurrection;

C. A majority (64%) of respondents believe that anyone who entered the Capitol building on J6 is responsible for others protestors' violence and destruction of property;

D. 70% of respondents believe that ANYONE who went inside the Capitol building on January 6 was trying to stop the certification of the electoral vote for president.

---

[1] Survey participants are registered D.C. voters, and thus representative of the potential venire, and will be referred to as respondents.

[2] The terms J6 and January 6 will be used interchangeably throughout this pleading.

Garcia retained John Zogby, a jury consultant, to conduct an online survey of 400 Washington, D.C. registered voters regarding their opinions about the January 6, 2021, events at the Capitol building and sources of media about such events. (Survey results and tabulations attached). Greater than 9 in 10 respondents (95%) said they have overall familiarity (very and somewhat combined) with the January 6, 2021, events at the Capitol; and more than two-thirds (67%) of whom stated they are very familiar with these events. Close to 9 out of 10 respondents (88%) who are familiar with Garcia, felt that if he were shown to have been inside the Capitol building on January 6, 2021, he should be convicted of obstruction of justice and civil disorder.

In sum, Garcia submits that detrimental pretrial publicity and extreme community prejudice in the District of Columbia, as evidenced in the attached survey results, are so likely to have affected the jury pool, that the venire must be presumed to be tainted—and that no voir dire cannot remedy or mitigate this extreme level of prejudice.

## I. FACTUAL AND PROCEDURAL GROUNDS

This indictment stems from the events at the United States Capitol building on January 6, 2021. During the rally at the National Mall, political statements favorable to President Trump, along with criticism of the national election, were made by numerous speakers, including the President. President Trump then told the crowd to walk down the Capitol building to protest and express their political grievances, and that he would walk with them. Members of the crowd, including Garcia, walked down to the Capitol. As a result of the events that unfolded on that day, the Government charged hundreds of individuals, including Garcia, with federal felonies and misdemeanors in the District of Columbia.

On February 17, 2021, a grand jury returned a six-count indictment charging Garcia with: 18 U.S.C. §§ 231(a)(3), (civil disorder); 18 U.S.C. §§ 1512(c)(2),

(obstruction of an official proceeding); 18 U.S.C. §§ 1752(a)(1) and (2) (entering and remaining in a restricted building or grounds and disorderly and disruptive conduct in a restricted building or grounds,); and 40 U.S.C. §§ 5104(e)(2)(D) and (G) (disorderly conduct in a Capitol building and parading, demonstrating, or picking in a Capitol building). (DE 11). Subsequently, on November 10, 2021, the grand jury returned a superseding indictment that revised the language in Counts One (§ 231), Two (§1512), Three (§ 1752) and Four (§ 1752). (DE 44).

### A. Attorney General Merrick Garland Has Compared J6 To The Oklahoma City Bombing And National Leaders Continue To Compare J6 To Pearl Harbor, 9/11, And The Civil War

Attorney General Garland stated, "there was a line that connected the January insurrection to the Oklahoma City bombing and back to the battles of the original Justice Department against the Ku Klux Klan."[3] Garland's comparison is telling, because in the Oklahoma City bombing case, Garland supervised the prosecutors that consented that the Eastern District of Oklahoma could not provide a fair trial, and agreed to a transfer of venue. *United States v. McVeigh*, 918 F. Supp. 1467, 1470 (W.D. Okla. 1996) ("There is no disagreement among the parties with Judge Alley's concern about a trial in Oklahoma City. The effects of the explosion on that community are so profound and pervasive that no detailed discussion is necessary."). The same result should occur here. Indeed, for the past year, political leaders keep describing January 6 as one of the greatest tragedies in American history, and in the same league as the 9/11 terrorist attacks, the Oklahoma City Bombing, Pearl Harbor, and the Civil War. President Biden called J6, "one of the worst attacks on our democracy," in his speech before a joint session of Congress.[4]

---

[3] Merrick Garland ties Oklahoma City bombing to Capitol riot (yahoo.com) (June 15, 2021).
[4] Right-wing erupts after Biden declares Jan. 6 "worst attack on democracy since Civil War" | Salon.com (April 28, 2021)

## MEMORANDUM OF LAW

## II. LEGAL STANDARD

The Fifth and Sixth Amendment of the United States Constitution entitle criminal defendants to a fair trial by an impartial jury. "The great value of the trial by jury certainly consists in its fairness and impartiality." *United States v. Burr*, 25 F. Cas. 49, 51 (CC Va. 1807). The right to an impartial jury is a cornerstone of due process. *In re Murchison*, 349 U.S. 133, 136 (1955). Federal Rule of Criminal Procedure 21(a) instructs that district courts "must transfer the proceeding . . . if the court is satisfied that so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there."[5]

Courts consider the following factors in determining whether to grant a change of venue request are (1) the size and characteristics of the community; (2) the nature and extent of pretrial publicity; (3) the proximity between the publicity and the trial; and (4) evidence of juror partiality. *See Skilling*, 561 U.S. 358, 378-81 (2010). While the *Skilling* factors likely apply to the instant matter,[6] in some cases, a potential jury pool can be presumed to be irredeemably biased, when the alleged crime results in "effects . . . on [a] community [that] are so profound and pervasive that no detailed discussion of the [pretrial publicity and juror partiality] evidence is necessary." *United States v. McVeigh*, 918 F. Supp. 1467, 1470 (W.D. Okla. 1996) (transferring the trial of the Oklahoma City bombing suspects from Oklahoma City to the District of Colorado).

## III. ARGUMENT

---

[5] The Constitution's place-of-trial prescriptions do not impede transfer of the proceeding to a different district at the defendant's request if extraordinary local prejudice will prevent a fair trial. *See Skilling v. United States*, 561 U.S. 358, 378 (2010).

A review of the *Skilling* factors weigh in favor of transferring Garcia's case from the District of Columbia.

### 1.   Size and Characteristics of the Community[7]

Washington D.C. is a relatively small community, with a population of about 700,000 and an estimated potential jury pool of less than 500,000.[8] Approximately 93% of voters in Washington voted against Donald Trump, rendering it the least diverse political population in the country.[9] The loathing towards Donald Trump and his supporters in the District is obvious. The Democratic candidate received more than 90% of the vote in both elections. This astounding lack of political diversity is unique to the jury pool for the District of Columbia. Unfortunately, America's current political divide is at remarkable levels.[10] And the results of Zogby's survey of D.C. voters bears this out: 73% of respondents believe that any individual who was inside the US Capitol on J6 should be convicted of insurrection—a charge not even the Government has levied.

The D.C. jury pool, already politically averse to Donald Trump supporters, has been besieged with daily media coverage of the same by the media following the January 6 incident. According to a Pew Research Center poll, Democrats were significantly more likely to hear about the Capitol incident than Republicans.[11]

---

[7] The Federal Public Defender's Office for the District of Columbia has recently engaged the services of an expert to conduct a study into the potential bias of the District of Columbia's jury pool. Mr. Garcia reserves the right to supplement this filing with facts and statistics gleaned from that study upon its completion.

[8] See District of Columbia, The Urban Institute (September 2021), https://www.urban.org/policycenters/cross-center-initiatives/state-and-local-finance-initiative/projects/state-fiscalbriefs/Washington-dc (last visited Jan. 11, 2022).

[9] See Election results: The 2020 presidential race, Politico.com (2021); https://www.politico.com/2020-election/results/president (last visited Jan. 11, 2022).

[10] America is exceptional in the nature of its political divide, Pew Research Center (2021), https://www.pewresearch.org/fact-tank/2020/11/13/america-is-exceptional-in-the-nature-of-its-political-divide/ (last visited Oct. 14, 2021).

[11] Views on the U.S. Capitol riot, Pew Research Center (2021),

If Garcia proceeds to trial in Washington, D.C., the jury pool in his case would be comprised of those who voted nearly unanimously against Donald Trump and have been barraged with propaganda about a "white nationalist" attack and are continuously told they were victims of an "insurrection," who were placed under curfew and locked down as a result of danger posed by "Domestic Violent Extremists." Again, Zogby's survey confirms this extreme bias present in D.C., because 66% of respondents agreed that J6 posed a dire threat and the worst assault on US democracy since Pearl Harbor.

In addition, the jury would be overseeing the case of a defendant they have gotten to know as a "proud boy" in that group of "insurrectionists" who triggered the city's siege. The daily lives of members of the potential jury pool were disrupted in the days, weeks, and months following J6, since travel and transportation were limited and disrupted in that section of Washington. The unavoidable community prejudice, and particularized prejudice against Garcia render the venire so greatly prejudiced against him that he cannot obtain a fair and impartial trial in Washington, D.C.

Based on the findings of the 2021 political polarization research, D.C. jurors would be statistically more likely to skew their verdict in favor of the more politically favorable verdict – a guilty verdict – to suit their tribal-political goals. Indeed, jurors would feel shame to even raise the possibility of a not guilty verdict in the Washington D.C. community of jurors. "Bias can infect the cognitive process from beginning to end and anywhere between," and "political commitments are very likely to give rise to bias," according to a Florida State University study on the issue of liberal bias.[12] A 2018 study of 51 experimental

---

https://www.pewresearch.org/politics/2021/01/15/views-on-the-rioting-at-the-u-s-capitol/ (last visited Oct. 14, 2021).

[12] Bo Winegard el al., Equalitarianism: A Source of Liberal Bias (May 8, 2018), https://ssrn.com/abstract=3175680.

studies involving over 18,000 participants examined the prevalence of political bias when it challenged political beliefs or allegiances.[13] The researchers found that people exhibited a bias in favor of their own politics, that they saw information as "more valid and compelling when it confirmed rather than challenged their political affinities."[14]

Considering the extreme community prejudice and the highly politicized environment of Washington D.C., a fair trial for Garcia is improbable. This improbability can be computed. In assessing human behavior, the United States Court of Appeals for the District of Columbia created a fitting test: "We are concerned not simply with probabilities, but with conditional probabilities: if one event occurs, how likely is it that another event will occur?" *United States v. Prandy-Binett*, 995 F. 2d 1069, 1070 (D.C. Cir. 1993); *United States v. (Monte) Brown*, 374 F. 3d 1326, 1328 (D.C. Cir. 2004); *see also Skilling*, 130 S.Ct. at 2948 ("[A]s the tide of public enmity rises, so too does the danger that the prejudices of the community will infiltrate the jury"). The value of this analysis is to consider the effect of circumstances in the cumulative. *United States v. Prandy-Binett II*, 5 F. 3d 558, 559 (D.C. Cir. 1993). Certainly, this conditional probability analysis is pertinent to reviewing prospective jurors.

### 2.   Nature and Extent of Pretrial Publicity

Garcia's case is tied to an event that was so impactful on the consciousness of District residents that it is impossible for local jurors to reach a fair and impartial verdict. District residents have been bombarded with wall-to-wall coverage of the January 6th events, related arrests, criminal charges and, more

---

[13] Peter H. Ditto et al., At Least Bias Is Bipartisan: A Meta-Analytic Comparison of Partisan Bias in Liberals and Conservatives, 14 Perspectives on Psychological Science 273-291 (2018).

[14] Id.

recently, prosecutorial outcomes. The National Guard was deployed to Washington D.C. for more than 4 months after the incident.[15] The Mayor of D.C. declared a state of emergency and implemented a 6 P.M. curfew for weeks.[16] The District implemented significant closures of roads and public spaces in advance of President Biden's inauguration, in direct response to the violence at the Capitol on January 6th.[17]

Though as of today there are no longer road closures and the National Guard has stepped down, there are still the comments that the Vice President made on the anniversary of January 6, 2022. "Certain dates echo throughout history, including dates that instantly remind all who have lived through them -- where they were and what they were doing when our democracy came under assault. Dates that occupy not only a place on our calendars, but a place in our collective memory. December 7th, 1941. September 11th, 2001." And January 6th, 2021."[18] The Department of Homeland Security declared that government offices were potential targets of violent domestic extremists, who were emboldened by the "recent mob assault" on the Capitol.[19] Every potential juror in the District was impacted by the events on Capitol Hill on January 6th.

---

[15] See National Guard troops leave US Capitol more than 4 months after January 6th riot, FOX5 Washington DC, https://www.fox5dc.com/news/national-guard-troops-leave-us-capitol-more-than-4-months-after-january-6th-riot

[16] Press Release, Mayor Muriel Bowser, January 6, 2021, https://mayor.dc.gov/release/mayor-bowser-issues-mayor's-order-extending-today's -public-emergency-15-days-a1 (last visited Nov. 22, 2021).

[17] DC Inauguration Updates: 4 Bridges Between DC, Virginia Closing; National Mall Closed; NBC4 Washington, https://www.nbcwashington.com/news/local/dc-inauguration-updates-fridayclosures- threats-national-mall/2542719/ (last visited Jan. 11, 2022).

[18] Vice President Kamala Harris' remarks on January 6 anniversary Updated 11:13 AM ET, Thu January 6, 2022 https://www.cnn.com/2022/01/06/politics/transcript-kamala-harris-january-6-anniversary-speech/index.html

[19] DHS Warns of Heightened Threats from Violent Domestic Extremists, NPR, https://www.npr.org/2021/01/28/961470061/dhs-warns-of-heightened-threats-from-violent-domestic-extremists (last visited Jan. 11, 2022).

Our nation's leaders have continued to cast aspersions on individuals like Garcia. On January 26th, while speaking in Washington, D.C., President Biden referred to Trump supporters involved in the January 6th incident as "a group of thugs, insurrectionists, political extremists, and white supremacists."[20] While on the House floor in Washington, D.C., Representative Cori Bush called the January 6th incident "a white supremacist insurrection" and a "domestic terror attack."[21] Indeed, within the first week of the incident 73% of Democrat leaders in Washington referred to the January 6th event as an "insurrection."[22] Democrat lawmakers' social media engagement skyrocketed after January 6th as they began heavily discussing the incident.[23] By February, it became second nature for Democrats to describe the incident as an "insurrection" and refer to Trump supporters as "white supremacists." And before the Senate Judiciary Committee on February 22, 2021, Attorney General Merrick Garland described the January 6th incident as "a heinous attack that sought to disrupt a cornerstone of our democracy" and described the individuals involved as "white supremacists . . . who stormed the Capitol."[24]

---

[20] Remarks by President Biden at Signing of an Executive Order on Racial Equity, The White House (2021), https://www.whitehouse.gov/briefing-room/speeches-remarks/2021/01/26/remarks-by-president-biden-at-signing-of-an-executive-order-on-racial-equity (last visited Nov. 19, 2021).

[21] Rep. Cori Bush Calls Trump 'White Supremacists-in-Chief', NBC4 Washington, https://www.nbcwashington.com/news/national-international/rep-cori-bush-calls-trump-white-supremacist-in-chief/2540892 (last visited Nov. 22, 2021).

[22] Lawmakers of each party used distinct language on social media in days following Jan. 6 rioting at U.S. Capitol, Pew Research Center (2021), https://www.pewresearch.org/fact-tank/2021/01/15/how-lawmakers-social-media-activity-changed-in-the-days-after-the-u-s-capitol-riot/ft_2021-01-15_socialmediacongress_01/ (last visited Nov. 22, 2021).

[23] Audience engagement with posts from Democratic lawmakers increased after Jan. 6 rioting at U.S. Capitol, Pew Research Center (2021), https://www.pewresearch.org/facttank/2021/01/15/how-lawmakers-social-media-activity-changed-in-the-days-after-the-u-scapitol-riot/ft_2021-01-15_socialmediacongress_02 (last visited Jan. 11, 2022).

[24] Hearing before the U.S. Senate Committee on the Judiciary, Merrick Brian Garland (Nominee for Attorney General), February 22, 2021 (2021), https://judiciary.senate.gov/imo/media/doc/SJC%20Testimony.final.pdf (last visited Jan. 11, 2022).

The Department of Homeland Security declared that government offices were potential targets of violent domestic extremists, who were emboldened by the "recent mob assault" on the Capitol. Every potential juror in the District was impacted by the events on Capitol Hill on January 6th.

Local Washington, D.C. news was filled with coverage of the January 6th events and resulting aftermath, replete with references to "insurrectionists," "white supremacists" and even suggestions of a "race war."[25] Former President Trump has been referred to as the "leader" of these "white supremacists" and was placed on trial for "inciting an insurrection."[26] Nancy Pelosi went so far as to declare that Donald Trump was an accessory to murder.[27]

The country recently observed the one-year anniversary of the January 6th events. President Biden marked the occasion by delivering a speech from Statutory Hall in the Capitol. He referred to January 6th as an "armed insurrection" and said that individuals like Garcia "were looking to subvert the constitution."[28]

The combination of prejudiced politics, and prejudiced pretrial publicity, render the District of Columbia a hostile jurisdiction for the trial of Garcia. When considered in combination with the community prejudice of Washington D.C. to

---

[25] Analysis: A race war evident long before the Capitol siege, WTOP, https://wtop.com/national/2021/02/analysis-a-race-war-evident-long-before-the-capitol-siege-2/ (last visited Nov. 22, 2021); Dozens charged in Capitol Riots Spewed Extremist Rhetoric, NBC4 Washington (2021), https://www.nbcwashington.com/news/national-international/dozenscharged- in-capitol-riots-spewed-extremist-rhetoric/2575102/ (last visited Nov. 22, 2021); Trump Legacy on Race Shadowed by Divisive Rhetoric, Actions, NBC4 Washington (2021), https://www.nbcwashington.com/news/politics/trump-legacy-on-race-shadowed-by-divisiverhetoric- actions/2536591 (last visited Nov. 22, 2021).

[26] Insurrection? Sedition? Unpacking the Legal Issues from the Capitol Riot, The Washington Post (2021), https://www.washingtonpost.com/business/insurrection-seditionunpacking-thelegal- issues-from-the-capitol-riot/2021/01/14/4fe1f618-5631-11eb-acc5 92d2819a1ccb_story.html (last visited Nov. 22, 2021).

[27] Nancy Pelosi on the Capitol Hill insurrection: Trump was an accessory to the crime of murder, MSNBC.com (2021), https://www.msnbc.com/msnbc/watch/nancy-pelosi-on-thecapitol- hill-insurrection-trump-was-an-accessory-to-the-crime-of-murder-99705925960 (last visited Nov. 22, 2021).

[28] READ: Full Transcript of Joe Biden's Speech on the Jan. 6 Insurrection, U.S. News (2022), https://www.usnews.com/news/politics/articles/2022-01-06/read-full-transcript-of-joe-bidensspeech-on-the-jan-6-insurrection (last visited Jan. 11, 2022).

the Capitol incident, the venire is rendered so greatly tainted that a presumption of prejudice must be applied, and a change in venue is necessary to cure the prejudice.

### A. Garcia Has Been Vilified In D.C. More Than Most J6 Defendants Because Of The City Of D.C.'s Lawsuit, His Status As A Retired Army Captain, And His Association With The Proud Boys

Indisputably, Garcia has been more vilified than other individuals charged in J6. Garcia stands out more in news coverage, because he ran in the primary in 2020 as Republican candidate for Florida House of Representative in District 116. And, he is considered the second highest retired officer that served in the military and is charged in J6. Lastly, the media has continually blasted Garcia for being affiliated with the proud boys.

Furthermore, in a much publicized lawsuit, the District of Columbia is suing two far-right groups— the proud boys and the oath keepers—through the prominent, high-profile law firm of Paul, Weiss, Rifkind, Wharton & Garrison, for allegedly conspiring to terrorize the city with the violent attack on the U.S. Capitol on Jan. 6. In its complaint, Garcia is mentioned on paragraph 213, page 58 it reads: "as Garcia being observed directing those around him to overtake law enforcement in the Capitol. As officers attempted to stop him from advancing, he yelled, "USA! Storm this shit!"[29] Garcia disputes this characterization. As to D.C. residents' sentiments on the proud boys and Garcia's association with them, the survey shows:

> Q10. Seven in 10 respondents (70%) stated they are familiar with the Proud Boys organization. This figure climbed to 8 in 10 (78%) among 30 – 49 year-old respondents.
>
> Q11. When asked their opinion of the Proud Boys, over two-thirds of respondents (68%) said they hold an overall unfavorable (very and somewhat combined) opinion, with a clear majority (60%) who expressed a very unfavorable opinion.

---

[29] DISTRICT OF COLUMBIA Case 1:21-cv-03267 Filed 12/14/21

Q12. Meanwhile, greater than a majority of those familiar with the Proud Boys (54%) expressed familiarity with Gabriel Garcia, with many fewer – approximately one-third (34%) – having said they are unfamiliar.

In addition, the prejudicial, extrajudicial statements made by the former acting United States Attorney for the District of Columbia, Michael R. Sherwin, have also contributed to a tainted jury pool. While still the D.C. U.S. Attorney, Sherwin expressed his personal opinion on the television program 60 Minutes that J6 protestors tried to violently overthrow the United States Government.

**Host Scott Pelley:** I'm not a lawyer, but the way I read the sedition statute, it says that, "Sedition occurs when anyone opposed by force the authority of the United States, or by force hinders or delays the execution of any law of the United States." Seems like a very low bar, and I wonder why you're not charging that now?

**Michael Sherwin:** Okay, so I don't think it's a low bar, Scott, but I will tell you this. *I personally believe the evidence is trending towards that,* and probably meets those elements.

**Host Scott Pelley:** Do you anticipate sedition charges against some of these suspects?

**Michael Sherwin:** *I believe the facts do support those charges.* And I think that, as we go forward, *more facts will support that,* Scott.

60 Minutes, Inside the Prosecution of the Capitol Rioters, Mar. 22, 2021 (Scott Pelley interview of former Acting U.S. Attorney Michael Sherwin) (emphasis added).

### 3.    The Proximity of Publicity to Trial

The local media continues to report, daily, on J6[30]. Recent sentencings of high-profile January 6th defendants have foisted the matter back into the national and local discourse.[31] Indeed, there are almost daily stories about the Congressional investigation into the events of January 6th, revealing new details and the failure of many people who have been subpoenaed by the Congressional committee to cooperate.

---

[30] Garcia intends to supplement this motion with an analysis of local D.C. media coverage of J6.

[31] QAnon Shaman Jacob Chansley gets 41 months in prison for role in Jan. 6 riot, NBC4 Washington (2021), https://www.nbcwashington.com/news/national-international/qanonshaman-jacob-chansley-gets-41-months-in-prison-for-role-in-jan-6-riot/2885734/ (last visited Jan. 11, 2021).

### 4.   Evidence of Juror Partiality

*Skilling* emphasized "the kind of vivid, unforgettable information the Court has recognized as particularly likely to produce prejudice," when considering the factor of jury partiality. *Skilling*, 561 U.S. at 383. As to this factor, the results of Zogby's survey at Q13 show Garcia cannot receive a fair trial in D.C., as that question specifically asks about Garcia: "Close to 9 out of 10 respondents (88%) who are familiar with Mr. Garcia, felt that if he were shown to have been inside the Capitol building on January 6, 2021, he should be convicted of obstruction of justice and civil disorder."

According to Zogby's survey, Washington, D.C. does not appear to be a hospitable venue for a fair trial of Garcia for his alleged involvement in the events at the Capitol on January 6, 2021, based on the analysis of the overall findings:

- Q6. Greater than 9 in 10 respondents (95%) said they have overall familiarity (very and somewhat combined) with the January 6, 2021 events at the Capitol; and more than two-thirds (67%) of whom stated they are very familiar with these events.

- Q7. A majority (54%) of the sample responded that national media sources were more responsible in shaping views about the events in question. Just under 4 out of 10 respondents (39%) said local news sources were more instrumental.

- Q8. Just under 2 in 3 respondents (66%) agreed that the January 6, 2021 events posed a dire threat to our nation and democracy (Statement A); this same opinion held by both age groups above 50 years old (50 – 64 and 65+ years of age) rose above three-fourths of respondents (75.1% and 78%, respectively).

- Q9. Nearly 3 out of 4 respondents (73%) believe that any individual who was inside the Capitol on January 6, 2021 should be convicted of insurrection.

- Q10. Seven in 10 respondents (70%) stated they are familiar with the Proud Boys organization. This figure climbed to 8 in 10 (78%) among 30 – 49 year-old respondents.

- Q11. When asked their opinion of the Proud Boys, over two-thirds of respondents (68%) said they hold an overall unfavorable (very and somewhat combined) opinion, with a clear majority (60%) who expressed a very unfavorable opinion.

- Q12. Meanwhile, greater than a majority of those familiar with the Proud Boys (54%) expressed familiarity with Gabriel Garcia, with many fewer – approximately one-third (34%) – having said they are unfamiliar.

- Q13. Close to 9 out of 10 respondents (88%) who are familiar with Mr. Garcia, felt that if he were shown to have been inside the Capitol building on January 6, 2021 he should be convicted of obstruction of justice and civil disorder. And just about two-thirds of these respondents (65%) said this view of theirs is more attributable to national media than local media sources (Q14).

- (Keep in mind that 54% of all respondents stated that national media sources were more

instrumental in shaping their views of the January 6, 2021 events at the Capitol [Q7].)

- Q15. Seven out of 10 (70%) respondents believe that anyone who went inside the Capitol building that day were trying to stop the certification of the Electoral College vote for president. And almost two-thirds (64%) of respondents believe that despite not personally committing acts of vandalism or violence, an individual could still be held responsible for such serious crimes assuming they went inside the building that day (Q16).
- Q17. More than one-third respondents who said yes to Q16 (35%) stated the reason for holding such a view was because they believe that ANYONE who entered the building that day is guilty of such acts (Statement A). While greater than 6 in 10 respondents (62%) stated they hold such a belief because just being inside regardless of personal commission means they were involved in planning or orchestrating the events (Statement B).
- 

## IV. CONCLUSION

Therefore, Garcia cannot obtain a trial by an impartial jury in the District of Columbia. Garcia submits that the Southern District of Florida would be an appropriate venue, where Garcia resides and was arrested. The South Florida community was not prejudiced through the closure of their streets or through months long National Guard presence. The parties are much more likely to find objective jurors in South Florida than in Washington D.C.

Alternatively, Garcia asks to use a venire from a neighboring district, such as the Eastern District of Virginia or the District of Maryland, but still hold the trial in District of Columbia. This trial will not be like some complex, long murder trial that takes months to try. It can be tried in a week.

The Court should not wait for voir dire to commence before considering a transfer of venue. A case of this magnitude, where the community prejudice is so high, should be transferred now. If the Court waits until voir dire commences, any postponement of voir dire could potentially reset the case to 2023.

Based on the foregoing, Garcia has demonstrated that he faces significant prejudice in the District of Columbia, prohibitive of a fair and impartial jury as guaranteed by the Fifth and Sixth Amendments to the United States Constitution. As such, Garcia requests that this Honorable Court transfer this matter to the Southern District of Florida, pursuant to Fed. R. Crim. P. 21(a), or use a venire

from a neighboring district, such as the Eastern District of Virginia or the District of Maryland, but still hold the trial in the District of Columbia.

WHEREFORE, Garcia respectfully moves this District Court grant motion, as detailed above.

Respectfully submitted,

/s/Aubrey Webb
Law Offices of Aubrey Webb
55 Merrick Way, Suite 212
Coral Gables, Florida 33134
305-461-1116
Email:  aubrey@aqwattorney.com

/s/Charles R. Haskell
Law Offices of Charles R. Haskell
641 Indiana Ave. N.W.,
Washington D.C. 20004
202-888-2728
Email: Charles@CharlesHaskell.com

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was efiled to the Office of the Clerk, United States District Court, District of Columbia, 333 Constitution Ave., N.W. Washington D.C. 20001, Room 1225 and to the Office of the United States Attorney, 555 4th St N.W., Washington D.C. 20530, on February 1, 2022.

/s/Aubrey Webb