UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

CASE NO.: 21-CR-129

Plaintiff,

vs.

Gabriel Garcia,

Defendant.

_____________________________________/

**MOTION TO REMOVE GPS ANKLE MONITOR BASED ON CHANGE OF CIRCUMSTANCES**

COMES NOW, the Defendant, Gabriel Garcia, and files his Motion to Remove the GPS Ankle Monitor Based on Change of Circumstances, and states the following grounds:

**FACTUAL GROUNDS**

1. Mr. Garcia has worn a GPS ankle monitor as part of his pretrial release conditions since February 2021. Mr. Garcia has no criminal history. And the Government has not charged him with any crimes of violence or destruction of property.

2. On January 20, 2022, while descending a ladder for work, his ankle monitor got caught in a ladder, causing him to fall to the ground and dislocate his left shoulder. (Medical Records were previously attached for his Motion to Temporarily Remove GPS ankle monitor, which the Court recently granted, See DE 51).

3. Mr. Garcia has been out on pretrial release with the ankle monitor since February 2021. Since then the Government has not alleged he has violated his pretrial conditions. Also, this Court has removed his curfew and has allowed him to travel numerous times outside of Florida.

4. Counsel contacted AUSA A. Buckner for the Government's position, and the

Government opposes this Motion.

5. Mr. Garcia avers that "the underlying reasons for this court's prior decisions regarding pretrial [release and conditions] have substantially changed." *United States v. Bikundi*, 73 F. Supp. 3d 51, 55 (D.D.C. 2014) (citation omitted). First, the ankle monitor caused him to fall off a ladder. Second, his discovery of a video of an independent journalist's interview of him on the Capitol steps on January 6, as it casts substantial doubt on the Government's allegations that Mr. Garcia was there to violently disrupt the certification of the results of the 2020 Presidential Election.

**MEMORANDUM OF LAW**

This Court can grant Mr. Garcia's request under 18 U.S.C. § 3142. The party requesting the modification must "establish that new information exists that was not known to him or her at the time of the initial detention hearing, and that this new information is material to his or her release conditions regarding flight or dangerousness." *United States v. Wei Seng Phua*, 2015 WL 127715, at *1 (D. Nev. Jan. 8, 2015); *see* 18 U.S.C. § 3142(f). As to new information, Mr. Garcia cites to his recent work accident caused by the ankle monitor. And he cites to the recent video he listed in discovery, and provided to the Government, where Mr. Garcia gives an interview on the Capitol building steps on January 6, 2021, stating that he was there peacefully protesting and expressing his political grievances, that he accepted that Biden won the presidential election, and that the courts had legitimately dismissed all of the lawsuits challenging the presidential election. This video contradicts Government's allegations against him, because it shows Mr. Garcia believed he was peacefully, expressing a political opinion.

This new discovered video of him being interviewed on the Capitol steps contradicts the Government's allegations that he was there to cause violence and disrupt Congress's certification

of the electoral vote. Further, there is additional video that the Government has not harped on of Mr. Garcia offering the Capitol Police Officers water, and of him telling other protestors that the police are just doing their job. Additionally, Mr. Garcia vigorously disputes the characterization that he was calling the police traitors. Rather, he was calling the members of Congress traitors. And, while the Government continues to characterize Mr. Garcia's actions that day as scary, he did not physically harm anyone, nor did he intend to, and he did not destroy any property. Most of the Government's allegations concern Mr. Garcia's crass and offensive speech, which the Government continuously describes as "aggressive."

Also, Mr. Garcia suspects the real reasons the Government will not consent to removing his ankle monitor are arbitrary and have nothing to do with him appearing in court—i.e., his affiliation with the Proud Boys, the Government's false belief that he is a of leader of the group, his status as a hard-right former Republican Candidate for State Senate who almost won his primary, and his status as a retired Army Captain.

Importantly, the condition of the ankle monitor was not added because there were any concerns about Mr. Garcia not appearing for court, engaging in unauthorized travel, or being a flight risk—the usual, logical rationales for imposing an ankle monitor. Certainly, the Government did not make any of those arguments to the D.C. Magistrate Judge when it asked for the ankle monitor. At his initial appearance in the Southern District of Florida, the Government neither requested the requested the ankle monitor nor did the Magistrate Judge impose it.

In fact, the only reason the Government asked for it was because he had a small pocketknife in his possession. He regularly a small pocketknife for work, placed it in the security bin upon entering a building, and went to check in with his Pretrial Officer. He was not trying to hide anything. The officer then reported to the Government that he had a weapon. Mr. Garcia

tried to explain that he regularly carries a pocketknife for work, which he had just come from, to no avail.

When the District Court reviewed the Magistrate's pretrial release order, in addition to disparaging his military service, the District Court cited to the federal statutory definition, 18 U.S.C § 930, of a pocketknife which excludes as a weapon any pocketknife with a blade of 2.5 or less inches, one inch shorter than Florida's law. Thus, because the blade was one-inch longer, it was federally prohibited. He has paid for this honest mistake of law by wearing the ankle monitor for the past year. Notably, other January 6 defendants, even those with violent charges pending, eventually had their ankle monitors removed after demonstrating compliance with their pretrial release conditions. (See USA v. Alexander Harkrider, 21-CR-117.)

WHEREFORE, Mr. Garcia respectfully moves this District Court to order the removal of the ankle monitor based on the change of circumstances.

Respectfully submitted,

/s/Aubrey Webb
Law Offices of Aubrey Webb
55 Merrick Way, Suite 212
Coral Gables, Florida 33134
305-461-1116
Email: aubrey@aqwattorney.com

/s/Charles R. Haskell
Law Offices of Charles R. Haskell
641 Indiana Ave. N.W.,
Washington D.C. 20004
202-888-2728
Email: Charles@CharlesHaskell.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was efiled to the Office of the Clerk, United States District Court, District of Columbia, 333 Constitution Ave.,

N.W. Washington D.C. 20001, Room 1225 and to the Office of the United States Attorney, 555 4th St N.W., Washington D.C. 20530, on February 3, 2022.

/s/Aubrey Webb