UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Case No. 1:21-CR-129 |
| : | |
| GABRIEL GARCIA, : | |
| : | |
| *Defendant.* : | |
| _____/ | |

**DEFENDANT'S MOTION TO
AMEND CONDITIONS OF RELEASE**

Defendant Gabriel Garcia, by and through undersigned counsel, moves this Court to amend one of the conditions of release that were imposed upon him on February 11, 2021. *See* D.E. 9. Specifically, Mr. Garcia requests that the Court strike the condition of the release order prohibiting him from possessing a firearm. *Id.* at 2, ¶ 7(s). In support of this request, he states the following grounds:

**I. FACTUAL AND PROCEDURAL HISTORY**

1. This indictment stems from the events at the United States Capitol building on January 6, 2021. The Government later charged hundreds of individuals, including Garcia, with federal felonies and misdemeanors in the District of Columbia. On February 17, 2021, a grand jury returned a six-count indictment charging Garcia with: 18 U.S.C. §§ 231(a)(3), (civil disorder); 18 U.S.C. §§ 1512(c)(2), (obstruction of an official proceeding); 18 U.S.C. §§ 1752(a)(1) and (2) (entering and remaining in a restricted building or grounds and disorderly and disruptive conduct in a restricted building or grounds); and 40 U.S.C. §§ 5104(e)(2)(D) and (G) (disorderly conduct in a Capitol building and parading, demonstrating, or picking in a Capitol building). D.E. 11. Subsequently, on November 10, 2021, the grand jury returned a superseding indictment that

1

revised the language in Counts One (§ 231), Two (§1512), Three (§ 1752) and Four (§ 1752). D.E. 44. Mr. Garcia is a 37-year-old resident of the Southern District of Florida.

2. Previously, on January 19, 2021, the FBI arrested Mr. Garcia, and they brought him before a Magistrate in the Southern District of Florida for his initial appearance; he later posted bond. Subsequently, at his first appearance before a Magistrate in the District of Columbia, the Government asked for a GPS monitor and a curfew, and the Court granted the request.

3. Since that time, Mr. Garcia has complied with his conditions of release while living and working in Florida. He has no criminal record and is a general contractor working in the aluminum window industry. He is a retired Army Officer, served in Iraq, and received an honorable discharge after 15 years of service.

4. Mr. Garcia now seeks an order from this Court that amends the conditions of release imposed upon him by Magistrate Judge Meriweather on February 17, 2021. Specifically, Mr. Garcia requests that the condition prohibiting him from possessing a firearm, D.E. 9 at 2 (¶7(s)), be lifted. Both the Government and Pretrial Services object to this request.

5. In sum, the Government certainly trusted Mr. Garcia with firearms when they deployed him to Iraq to fight for them in a leadership capacity as an officer. And now, although the media has convicted him, he is still legally presumed innocent, has no criminal record, is not charged with any crimes of violence or destruction of property, and has been a contributing member of society all of his life. His constitutional rights are limits on the Government's powers—not his.

## II. ARGUMENT

"If a person is ordered released by a magistrate judge . . . the person may file, with the court having original jurisdiction over the offense, a motion for amendment of the conditions of release." 18 U.S.C. § 3145(a)(2). The statue "does not specify the standard of review to be

applied by a district court reviewing a magistrate judge's release or detention order." *United States v. Owens*, No. 21-CR-286 (BAH), 2021 WL 2188144, at *5 (D.D.C. May 28, 2021). And though the D.C. Circuit has not explicitly answered that question, every other circuit deciding the issue has concluded that a "district court reviews a magistrate judge's release or detention order *de novo*." *United States v. Chrestman*, 525 F. Supp. 3d 14, 23 n.5 (D.D.C. 2021) (collecting cases).

As such, this Court is free to consider for itself what "least restrictive further condition, or combination of conditions, . . . will reasonably assure the appearance of [Mr. Garcia] as required and the safety of any other person and the community." 18 U.S.C. § 3142(c)(B); *see also United States v. Motamedi*, 767 F.2d 1403, 1405 (9th Cir. 1985) (noting that the Bail Reform Act of 1984 "mandates release of a person facing trial under the least restrictive condition or combination of conditions that will reasonably assure the appearance of the person as required"). Pretrial conditions of release cannot "amount to punishment." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979) (finding that such conditions violate the Fifth Amendment's Due Process Clause).

The Second Amendment to the Constitution, as interpreted by the U.S. Supreme Court in *McDonald v. Chicago*, 561 U.S. 742 (2010), relying in part on *Heller v. District of Columbia*, 554 U.S. 570 (2008), protects a private person's right to possess firearms in states and localities. While that right may be subject to reasonable restrictions, its importance as a recognized, constitutionally-based freedom guaranteed to the American citizenry must fairly be given considerable weight before it can appropriately be restricted. In Mr. Garcia's case, the current restriction is neither reasonable nor justified by the circumstances. He now requests that one such condition, that prohibiting him from possessing a firearm, be lifted as unduly restrictive and

unconstitutional.

**(A) Mr. Garcia is Not a Danger to Any Other Person or the Community**

First, there is no specific evidence to suggest that Mr. Garcia is a danger to any other person or the community at large. He has no criminal record, is a gainfully-employed college graduate, former Army officer, and none of his alleged conduct in this matter involves violence. Undoubtedly, the Government has not charged him with hurting or assaulting anyone or destruction of property. The Government's basis for the civil disorder charge is Garcia yelling while in the Capitol crypt near a line of police officers. The Government does not allege Mr. Garcia assaulted or threatened these officers with violence; at most they allege he insulted the officers and tried to excite the crowd, both of which he adamantly denies. While much ado has been made of him yelling for "Nancy to come out play," there is nothing criminal or illegal about this conduct, nor does it form the bases for any of his charges, despite how distasteful and vulgar the comments may appear.[i] At a football game, when a fan yells for an injured player to be rolled off the field, it is understood to be vulgar, hyperbolic speech.

**(B) Mr. Garcia Does Not Pose a Risk of Nonappearance**

Second, there is no evidence to suggest that Mr. Garcia is a risk of nonappearance. Since being released in early 2021, his performance on pretrial supervision has been exemplary; he has "appeared" as required for all video conference hearings; and he communicates with his supervising probation officer whenever required.

**(C) The Firearm Restriction Violates Mr. Garcia's Second Amendment Rights**

Critically, the firearm restriction in Mr. Garcia's conditions of release unlawfully infringes upon his Second Amendment rights. The Second Amendment protects "the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *D.C. v. Heller*, 554

4

U.S. 570, 635 (2008). And while "unvirtuous" citizens, e.g. those convicted of crimes punishably by terms of imprisonment in excess of a year, may be stripped of their Second Amendment rights, Mr. Garcia is not a felon. *See United States v. Yancey*, 621 F.3d 681, 684–85 (7th Cir. 2010) (reasoning that "most scholars of the Second Amendment agree that the right to bear arms was tied to the concept of a virtuous citizenry and that, accordingly, the government could disarm 'unvirtuous citizens'" (citations omitted)). There are no factors showing him to be a danger to others. He has never been convicted of anything. He is not a "prohibited person" under 18 U.S.C. § 922(g) that would make his possession of firearms illegal. The allegations against him do not include any alleged assault against any person, or even the vandalizing or destruction of property.

For this reason, the firearm restriction as applied to Mr. Garcia in this case is unconstitutional because it prohibits him from using a gun "for the core lawful purpose of self-defense." *Heller*, 554 U.S. at 630. As allowed by Florida law, Mr. Garcia had a permit to carry a concealed handgun for self-defense purposes before these charges (*i.e.,* Florida Concealed Carry Permit #CW02100873 for Gabriel Garcia); *see also* Fla. Stat. § 790.06. To obtain this permit, Mr. Garcia had to satisfy distinct criteria including, for example, that he not suffer from "a physical or mental infirmity that prevents the safe handling of a handgun" and that he have completed "an approved firearms safety and training course, or its equivalent, which involves the actual firing of handguns and instruction in the laws of governing the carrying of a concealed handgun and the use of deadly force." *See* § 790.06(2)(c-h). Further, given his training in the Army, Mr. Garcia is qualified and lawfully authorized to possess a firearm under Florida law.[ii] To be clear, of course Mr. Garcia is not seeking to carry a concealed firearm. Rather, he only seeks to lawfully possess a firearm in accordance with all state, federal, and local laws.

**(D) Other D.C. Courts Have Allowed January 6 Defendants to Possess Firearms**

Recently, in the case of United States v. Charles Hand, 1:22-CR-111-01 (JEB), the Defendant moved for possession of his shotgun due to the danger of wild animals around his home in rural Georgia, citing his recent killing of six-foot water moccasin with a shovel that approached him. Over the Government's objection, the court granted his motion to possess a shotgun, but mandated it must be locked in storage and only used for defense against wild animals.

Additionally, in the United States v. Tina Logsdon, 1:22-cr-23-02 (TFH) (D.D.C.), Judge Thomas F. Hogan reversed a firearms restriction placed on a January 6 defendant. In that case, defendant Tina Logsdon had been charged with a family member, her spouse. Ms. Logsdon moved the District Court to lift the firearms restriction that had been imposed at the initial hearing. The Government, after seeking the firearms restriction at both the Rule 5 Hearing in Ohio and at the initial appearance in this District, ultimately chose not to impose lifting the firearms restriction, so long as Ms. Logston would still be prohibited from possessing "other weapons or destructive devices." Ms. Logston agreed to that. (ECF Docket #20, March 7, 2022). Mr. Garcia will agree to the same restriction. Judge Hogan granted Ms. Logsdon's request to have the firearms restriction lifted. (Minute Order, ECF Docket #21, March 9, 2022). Judge Hogan also added a condition that, when meeting with any U.S. Pretrial Services officers, Ms. Logsdon should not possess a firearm.

Also, in United States v. Loruhamah Yazdani-Isfehani, Case No. 1:22-cr-543-03 (CRC), Judge Cooper granted relief to a defendant seeking to lift a firearms restriction imposed as a condition of bond. There, as here, Magistrate Judge Farruqui had issued the restriction the Government sought. Judge Cooper did not find the proffered rationale sufficient to ban one

6

possessing firearms in one's home, although he did continue to limit the defendant's possession of firearms to possession within the defendant's home, rather than authorizing any carrying. This common-sense, more limited restrictions on this defendant's Second Amendment rights should be considered by this Court, as its statutory charge to impose only the "least restrictive" conditions necessary.

### III. CONCLUSION

Given Mr. Garcia's background, characteristics, and the nature of the offenses with which he has been charged, the release condition prohibiting him from possessing a firearm is unduly restrictive. The condition is neither necessary to address either a concern as to his danger to the community nor his risk of nonappearance, because Mr. Garcia poses no such danger or risk.

Finally, the condition, as applied to Mr. Garcia in this case, is unconstitutional under both the Second and Fifth Amendments. Nothing about Mr. Garcia's history, characteristics, or the charges at issue in this case suggest that he is a part of the "unvirtuous" citizenry to which firearm rights may be withheld. As such, the restriction essentially amounts to pretrial punishment without due process of law.

Although Mr. Garcia relinquished other firearms once this condition was imposed, he is seeking the ability to possess only one of his firearms, his handgun, a Glock 23, serial number HM5932. Additionally, he will agree that it must be kept and stored in a locked container in his home only. Florida law does allow for people to carry a firearm in a car without a permit, as long as it is securely encased under state law; but, Mr. Garcia is only asking he be allowed to keep the firearm in his home in a locked container for which only he has access to, which Pretrial Services can verify of course.

There is no basis to conclude on these facts that limiting Mr. Garcia's Second Amendment rights is necessary here. The blanket non-possession firearms restriction for all January 6 cases violates a basic principle in our criminal justice. Our system is not designed to, nor should it, treat defendants in bulk, much less as fungible, indiscriminately in assembly-line-like manner. Any bond condition should not be considered a "standard condition" of pretrial release without an examination into both the need for the restriction, and whether or not it is justified in the circumstances presented to the Court, taking into account the nature of the case (here, no charges of violence or destruction of property) along with this Defendant's background (no criminal history). And, this Court must remain mindful that the governing "least restrictive" paradigm was imposed for an important reason: Mr. Garcia is presumed innocent unless and until proven guilty.

For these reasons, Mr. Garcia respectfully requests that the Court amend his conditions of release by lifting the restriction prohibiting him from possessing a firearm. He understands that he must continue to abide by all other conditions listed there, or else be subject to the penalties and sanctions discussed on the release order.

Respectfully submitted,

/s/Aubrey Webb
Law Offices of Aubrey Webb
55 Merrick Way, Suite 212
Coral Gables, Florida 33134
305-461-1116
Email: aubrey@aqwattorney.com

/s/Charles R. Haskell
Law Offices of Charles R. Haskell
641 Indiana Ave. N.W.,
Washington D.C. 20004
202-888-2728
Email: Charles@CharlesHaskell.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was efiled to the Office of the Clerk, United States District Court, District of Columbia, 333 Constitution Ave., N.W. Washington D.C. 20001, Room 1225 and to the Office of the United States Attorney, 555 4th St N.W., Washington D.C. 20530, on June 3, 2022.

/s/Aubrey Webb

---

[i] Notably, Nancy Pelosi's daughter, noted journalist Alexandra Pelosi, interviewed Mr. Garcia for an upcoming documentary, and Mr. Garcia said that those comments, albeit crass, were made in jest and not meant literally. To which, Pelosi responded that she understood that, as would her mother.

[ii] Further, unlike January 6 defendant Stewart Rhodes who dropped a loaded firearm causing it to discharge in his face and blind him in one eye, Mr. Garcia has no history of dangerous handling of firearms or firearm mishaps.