UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Case No. 21-cr-129 (ABJ) |
| v. : | |
| : | |
| GABRIEL AUGUSTIN GARCIA, : | |
| also known as "Gabriel Agustin Garcia," : | |
| : | |
| Defendant. : | |

### GOVERNMENT'S OPPOSITION TO DEFENDANT'S
### MOTION TO REMOVE PRETRIAL RELEASE CONDITION

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this opposition to Defendant Gabriel A. Garcia's (the "Defendant") "Motion to Amend Conditions of Release," filed through counsel (ECF No. 78). The Defendant requests that this Court strike the condition of release prohibiting him from possessing a firearm. In support of his motion, the Defendant points to his lack of criminal record and his military service and subsequent honorable discharge after 15 years of service. ECF No. 78 at 2. Given these facts, the Defendant argues, the firearms prohibition is an unreasonable restriction on his constitutional right to possess firearms. ECF No. 78 at 3.

The Defendant has not raised any novel issue that merits any meaningful change to his release conditions, and the conditions of release should remain the same. The Defendant has shown a willingness to travel across state lines to engage in belligerent and obstructive behavior. Aside from his actions, however, his own words are perhaps the most concise summary of why, to ensure the safety of the community, the Court should leave the firearms restriction in place. For these reasons, the condition that the Defendant may not possess a firearm must be included among the conditions necessary to assure the safety of the community.

1

**FACTUAL BACKGROUND**

The Defendant is charged in a six-count superseding indictment for offenses committed at the U.S. Capitol Building on January 6, 2021. *See* ECF No. 44. The facts and evidence supporting the felony charges in this case have been recited by the government many times. *See*, *e.g.*, ECF No. 1-1, ECF No. 50. In short, the Defendant took part in an aggressive confrontation with U.S. Capitol Police Officers in the Crypt area of the U.S. Capitol Building wherein the Defendant positioned himself at the front of the police line and incited the crowd behind him, saying things such as "storm this shit" between shouting at the officers and calling them "fucking traitors." After the crowd breached the line of officers, the Defendant moved to the Rotunda, where he asked "Nancy" to "come out and play." Notably, the photo below, taken some time after the Defendant was in the Rotunda calling for Speaker Pelosi, captures the Defendant rinsing his eyes:



As outlined in the government's opposition to the Defendant's motion to remove his GPS ankle monitor (ECF No. 55), a forensic examination of the Defendant's phone revealed various messages sent by the Defendant as he prepared for his trip to Washington, D.C. At one point, an individual asked the Defendant whether the Defendant had a vest. The Defendant responded, "of course." As depicted below, the Defendant further stated, "I have side plates":



The Defendant continued with, "taking a knife as well" and "be happy my guns aren't going this time":



The Defendant further explained, "not for defense," but for "offense":



Messages sent shortly after January 6, 2021 reveal that the Defendant was willing to "go again":



The conduct alleged on January 6, 2021 was not a one-off for the Defendant. Defendant Garcia has traveled to D.C. twice before, in November 2020 and December 2020. Information

collected form Defendant Garcia's phone and Facebook account confirm that those visits were not without confrontation. For example, after his November visit, the Defendant stated, "Just Antifa I got 4 knocked out":

> Author Gabriel Garcia (Facebook: 100000183142825)
> Sent 2020-11-16 03:44:32 UTC
> Body Just Antifa I got 4 knocked out
>
> Author Gabriel Garcia (Facebook: 100000183142825)
> Sent 2020-11-16 03:45:02 UTC
> Body It felt great after seeing what they were doing to Trump supporters

Later during that same conversation, the Defendant bragged, "I smashed a couple of them":

> Author Gabriel Garcia (Facebook: 100000183142825)
> Sent 2020-11-16 03:38:48 UTC
> Body Hi love your pictures from around the world great video also I was in DC this weekend
>
> Author [redacted]
> Sent 2020-11-16 03:40:06 UTC
> Body Hi 🖤 Thank you! Hope everything went well with no Antifa fights 😊
>
> Author Gabriel Garcia (Facebook: 100000183142825)
> Sent 2020-11-16 03:40:25 UTC
> Body I smashed a couple of them
>
> Author Gabriel Garcia (Facebook: 100000183142825)
> Sent 2020-11-16 03:41:14 UTC
> Body You sent a video.

Additionally, the Defendant has encouraged future hostility. In a message regarding an individual(s) who has been tracking and reporting various defendants' post-January 6 conduct, the Defendant positively replies to a message suggesting that after the "J6 fiasco is over" they go after the individual(s) with "full force"[1]:

---

[1] There is no time or date associated with the screenshot provided. The government has not obtained any attribution information to confirm that the user "@cptgabrielgarcia" is in fact the Defendant.

4



Analysis of the Defendant's phone confirms that he has access to firearms:



5

The photo included above was sent on or about November 21, 2020 with the accompanying message, "I have my own gun show and just bought a flame thrower."

## PROCEDURAL HISTORY

The Defendant was arrested on January 19, 2021 in his home state of Florida pursuant to a Complaint and Arrest Warrant issued by a District of Columbia Magistrate Judge.[2] On that same date, the Defendant appeared in the Southern District of Florida. There, the Southern District of Florida Magistrate Judge released the Defendant on bond and, among other conditions, ordered that the Defendant possess "no firearms and surrender concealed weapons permit." *See* 1:21-MJ-02093 (EGT), Dkt. 3 at 1.

The Defendant waived the removal hearing and was ordered removed to the District of Columbia.

At the Defendant's initial appearance in the District of Columbia on February 2, 2021, a District of Columbia Magistrate Judge released the Defendant on personal recognizance subject to several conditions, including GPS monitoring and that he "not possess a firearm, destructive device, or other weapon." ECF No. 9 at 3.

On June 3, 2022, the Defendant filed his motion asking for the Court to remove the firearms prohibition. ECF No. 78.

The Pretrial Services Agency for the District of Columbia is opposed to the motion.

## LEGAL STANDARD

A person may file a motion for amendment of conditions of release to the Court having jurisdiction over the offense where the release conditions were set by a Magistrate Judge. *See* 18 U.S.C. § 3145(a)(2). Modifications are generally grounded in new information or a change in

---

[2] *US v. Gabriel Garcia*, 21-mj-95 (RMM).

6

circumstances that would merit such a modification. *See e.g., United States v. Hebron*, No. CRIM.A. 97-178 (TAF), 1997 WL 280568, at *1 (D.D.C. May 22, 1997); *accord United States v. Bikundi*, 73 F. Supp. 3d 51, 54 (D.D.C. 2014) (citing 18 U.S.C. § 3142(f)(2)(B)).

Under the Bail Reform Act, if a judicial officer determines that release under two standard conditions (not committing crimes and cooperating in the collection of DNA) "will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community," the judicial officer may impose additional conditions. 18 U.S.C. §§ 3142(b), (c)(1). In that event, the judicial officer shall release the defendant "subject to the least restrictive further condition, or combination of conditions" that "reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(c)(1)(B). These conditions may include the condition that the person "refrain from possessing a firearm, destructive device, or other dangerous weapon." 18 U.S.C. § 3142(c)(1)(B)(viii).

In determining appropriate conditions of release, the judicial officer considers factors including: (1) "the nature and circumstances of the offense charged"; (2) "the weight of the evidence"; (3) "the history and characteristics" of the defendant and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the [defendant's] release." 18 U.S.C. § 3142(g) ("Section 3142(g) factors"). The judicial officer may amend a release order "at any time." 18 U.S.C. § 3142(c)(3).

## **ARGUMENT**

I. **The Section 3142(g) Factors Establish that the Restriction Against the Defendant's Possession of a Firearm While on Pretrial Release is Not Unduly Restrictive**

The Section 3142(g) factors justify including the firearms restriction among the Defendant's conditions of release. The Defendant is charged with felony offenses related to

7

intentional and aggressive confrontation with U.S. Capitol Police Officers in the Crypt area of the U.S. Capitol Building. The Defendant incited the crowd behind him, saying things such as "storm this shit" between shouting at the officers and calling them "fucking traitors." After the crowd breached the line of officers, the Defendant moved to the Rotunda, where he asked "Nancy" to "come out and play." As indicated above, at some point it appears the Defendant was rinsing a chemical irritant out of his eyes. He was not a mere passive observer, and his continuous attempts to minimize his conduct by pointing out that the government has not charged him with assaulting an officer ignore the blatant hostility towards law enforcement officers that the Defendant proudly displayed as he filmed himself. Notably, as to the weight of the evidence, the government's filing at ECF No. 50 describes in detail the significant evidence in this case supporting its allegations, including the Defendant's own videos, which he posted to Facebook.

As to his history and characteristics, a forensic examination of the Defendant's phone revealed that he discussed "taking a knife" with him to the Capitol, suggested that others should "be happy my guns aren't going this time," and that he was taking action "not for defense," but for "offense." Furthermore, the government has alerted the Court to Defendant Garcia's past conduct, *see* ECF No. 74 at 3, regarding confrontational visits to the District of Columbia. An examination of the Defendant's Facebook messages indicates that, for one of those visits, the Defendant bragged about his assaultive conduct. The Defendant himself of course minimizes this conduct and offers his own explanation, ECF No. 75, yet this troubling history is not a coincidence.

"When the Government proves by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the community … a court may disable the arrestee from executing that threat." *United States v. Munchel*, 991 F.3d 1273, 1280 (D.C. Cir. 2021), *judgment entered,* 844 F. App'x 373 (D.C. Cir. 2021)) (citing *United States v. Salerno*, 481

U.S. 739, 751 (1987)). "It must be clearly identified," *Munchel*, 991 F.3d at 1282–83, and here, that threat is clear. Shortly after January 6, the Defendant himself revealed that he is willing to "go again." The Defendant's actions allow this Court to make a forward-looking determination as to the Defendant's dangerousness and impose conditions that mitigate that danger. *See United States v. Hale-Cusanelli*, 3 F.4th 449, 456 (D.C. Cir. 2021).

In sum, the nature and circumstances of the charged offenses (his participation in the Capitol riot), along with the weight of the evidence and the Defendant's history of aggressive conflicts indicate that the Defendant is already subject to the "least restrictive" combination of conditions necessary to ensure the safety of the community. 18 U.S.C. § 3142(c)(1)(B). And, as two separate magistrates have already determined, the firearms restriction mitigates the particular danger that the Defendant poses to the community, as demonstrated by his own actions.

## II. The Firearms Prohibition Does Not Unreasonably Restrict the Defendant's Constitutional Rights

"Like most rights, the right secured by the Second Amendment is not unlimited." *District of Columbia v. Heller*, 554 U.S. 570, 626–27 (2008). And, courts have held that restrictions on firearm possession are reasonable. *See, e.g., United States v. Snead*, No. 12-cr-132M, 2014 WL 4473773 (D.R.I. Feb. 4, 2014 (United States Postal Service employee was charged with unlawfully opening mail matter and removing gift cards and cash, in violation of 18 U.S.C. § 1703(a), a non-violent felony offense, and was restricted from possessing a firearm while on pretrial release). As the court in *Snead* observed,

> [I]ndividuals charged with a felony by indictment are subjected to various limitations on their ability to deal with firearms. 18 U.S.C. § 922(d)(1) (prohibits sale of firearms to a person under felony indictment); 18 U.S.C. § 922(n) (person under felony indictment cannot ship, transport or receive firearms transported in interstate commerce). The constitutionality of these provisions has been upheld in the aftermath of *Heller. See United States v. Charlestain,* 12–80054–CR, 2012 WL 1952292, at *4–5 (S.D.Fla. May 3, 2012) (§ 922(d)(1) constitutional); *United States*

    *v. Laurent,* 861 F.Supp.2d 71, 97–105 (E.D.N.Y.2011) (§ 922(n) constitutional on its face).

*Snead*, No. CR 12-132M, 2014 WL 4473773, at *8. *See also United States v. Smedley,* 611 F.Supp.2d 971, 974 (E.D.Mo.2009) (finding that the condition "is indicated by federal statutes that make it a crime for someone to sell or dispose of a firearm or ammunition to someone known to be under indictment for a felony offense, 18 U.S.C. § 922(d), or for someone, who is under indictment for a felony to receive a firearm or ammunition that has been shipped in interstate commerce, 18 U.S.C. § 922(m)").

    More broadly, courts have long had the authority to impose conditions on defendants' ability to remain at liberty pending trial, or even to detain them. *Salerno*, 481 U.S. 739 at 751-52. These are individualized determinations by a neutral judicial officer and are therefore constitutionally sufficient and do not violate due process. *Id*. Here, the Defendant is charged with obstructive, felonious conduct. The Defendant's attempt to find support in the misdemeanor cases of *United States v. Charles Hand*, 1:22-CR-111-01 (JEB), *United States v. Tina Logsdon*, 1:22-cr-23-02 (TFH), and *United States v. Loruhamah Yazdani-Isfehani*, Case No. 21-cr-543-03 (CRC), accordingly fails. And, in the context of the violent events of January 6 and his own actions, including overrunning law enforcement officers in order to gain further access to the Crypt and Capitol Building, the Defendant has bragged about carrying a knife (which, based on prior litigation, this Court knows him to own) and has referenced his guns. The Defendant's suggestion that he engaged in merely "hyperbolic" (ECF No. at 78 at 4) speech is belied by the actual conduct in which he engaged, which shows that he poses a threat to the community. The firearms prohibition is reasonably necessary to protect the community, "both in Washington, D.C., and locations of potential future demonstrations, and in the Defendant's home district*.*" *See United States v. Jared Hunter Adams*, 21-CR-0212 (ABJ), Dkt. No. 30.

The undersigned has consulted with D.C. Pretrial Services, who has indicated that the prohibition also ensures the safety of the individual pretrial supervising officer. *See Smedley,* 611 F.Supp.2d at 974 (finding that the firearms prohibition is a precaution to safeguard pretrial services officers); *United States v. Green*, No. 3:18-CR-356-S, 2019 WL 6529446, at *3 (N.D. Tex. Dec. 4, 2019) (where defendant admitted to having no respect for the federal government, "[e]ven if Defendant is not charged with a crime of violence and has no history of violence … Defendant's possession of firearms endangers officers of the Pretrial Services who may make unannounced visits to ensure that Defendant is complying with the conditions of his release.").

## CONCLUSION

The Defendant has not raised any novel issue that merits any meaningful change of his release conditions, conditions that are certainly reasonable in light of his conduct and his risk of danger to the community. For that reason and for the reasons listed herein, the government respectfully requests the Court deny the Defendant's motion.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar Number 481052

By: */s/ Angela N. Buckner*
Angela N. Buckner
DC Bar #1022880
Assistant United States Attorney
United States Attorney's Office
555 Fourth Street, N.W.
Washington, DC 20530
Phone: (202) 252-2656