UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| v. | ) ) ) | Crim. Action No. 21-0129 (ABJ) |
| GABRIEL AUGUSTIN GARCIA, | ) ) | |
| Defendant. | ) ) | |

## ORDER

Defendant's latest motion to amend conditions of release "requests that the Court strike the condition of the release order prohibiting him from possessing a firearm." Def.'s Mot. to Amend Conditions of Release [Dkt. # 78] ("Mot.") at 1; *see also* Reply in Supp. of Mot. [Dkt. # 81] ("Reply"). The government opposes the motion. Gov't's Opp. to Mot. [Dkt. # 79] ("Opp."). For the following reasons, the motion is **DENIED**.

### LEGAL STANDARD

Under the Bail Reform Act, a judge must release the defendant on personal recognizance or upon the execution of an unsecured appearance bond "unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b). The condition that the defendant not possess a firearm is not a required condition of release under the statute; section 3142(b) requires only the condition that the defendant not violate any federal, state, or local law, and, if appropriate, that he cooperate in the collection of DNA. *Id.*

However, the condition is explicitly contemplated in the statute as a permissible condition. Pursuant to 18 U.S.C. § 3142(c), if the judicial officer determines that the release described in

1

subsection (b), that is, release on personal recognizance, or with an unsecured appearance bond, will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community:

> such judicial officer shall order the pretrial release of the person –
>
>> (A) subject to the condition that the person not commit a Federal, State, or local crime . . .; and
>>
>> (B) subject to the least restrictive further condition, or combination of conditions, that such judicial officer determines will reasonably assure the appearance of the person as required and the safety of any other person and the community, which may include the condition that the person . . .
>>
>>> (viii) refrain from possessing a firearm, destructive device, or other dangerous weapon.

18 U.S.C. § 3142(c)(1)(B)(viii).

Under 18 U.S.C. § 3142(g), the factors to be considered in determining whether there are conditions that will reasonably assure the safety of the community include:

> (1) the nature and circumstances of the charged offenses;
>
> (2) the weight of the evidence against the defendant;
>
> (3) the history and characteristics of the defendant; and
>
> (4) the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release.

18 U.S.C. § 3142(g)(1)–(4).

Finally, "[a]s the D.C. Circuit has noted, the mere passage of time, without a substantial change in the 'underlying reasons for this court's prior decisions' regarding pretrial [conditions] is generally not sufficient to warrant reconsiderations." *United States v. Bikundi*, 73 F. Supp. 3d

2

51, 55 (D.D.C. 2014), quoting *United States v. Ali*, 534 F. App'x. 1, 2 (D.C. Cir. 2013) (per curiam).

## ANALYSIS

The inquiry here is whether the condition that the defendant may not possess firearms is needed, along with the other conditions imposed at the start of this case, to reasonably ensure the safety of the community. 18 U.S.C. § 3142(c)(1)(B). Defendant argues that the condition is not necessary: "although the media has convicted him, he is still legally presumed innocent, has no criminal record, is not charged with any crimes of violence or destruction of property, and has been a contributing member of society all of his life." Mot. at 2. He also invokes the Second Amendment to the United States Constitution, arguing that "the firearm restriction in Mr. Garcia's conditions of release unlawfully infringes upon his Second Amendment rights." Mot. at 4.

Putting aside defendant's frequent but entirely unsubstantiated complaint that "the media has convicted him," Mot. at 2, *see also* Mot. to Transfer Venue and Mem. of Law [Dkt. # 54] at 11 (arguing, without citation, that "the media has continually blasted Garcia" and "Garcia has been more vilified than other individuals charged in J6"), which has no bearing on this motion, and the reference to the presumption of innocence, which is a given in any case involving conditions of pretrial release, the Court will turn to the material in the record that bears on the question of dangerousness and whether there is a need to restrict access to firearms to ameliorate it.

On November 10, 2021, the grand jury returned a superseding indictment charging defendant with:

- Count One: Civil Disorder and Aiding and Abetting in violation of 18 U.S.C. § 231(a)(3) and (a)(2).

- Count Two: Obstruction of an Official Proceeding and Aiding and Abetting in violation of 18 U.S.C. 1512(c)(2).

- Count Three: Entering and Remaining in a Restricted Building or Grounds in violation of 18 U.S.C. § 1752(a)(1).

- Count Four: Disorderly and Disruptive Conduct in a Restricted Building or Grounds in violation of 18 U.S.C. § 1752(a)(2).

- Count Five: Disorderly Conduct in a Capitol Building in violation of 40 U.SC. § 5104(e)(2)(D).

- Count Six: Parading, Demonstrating, or Picketing in a Capitol Building in violation of 40 U.S.C. § 5104(e)(2)(G).

Indictment [Dkt. # 11].

The factual allegations underlying the indictment have been documented previously by the Court:

> According to the complaint filed by Special Agent Michael F. Biscardi, defendant took videos of himself that day. Statement of Facts [Dkt. # 1-1] ("SOF") at 4. In one video, defendant turned the camera on himself and noted that "We just went ahead and stormed the Capitol. It's about to get ugly." SOF at 4. The agent described the video as "depict[ing] an aggressive confrontation with U.S. Capitol Police officers, who are trying to prevent the crowd from advancing." SOF at 3–4. During the confrontation, defendant is heard shouting at police officers attempting to defend the building: "You fucking traitors! You fucking traitors! Fuck you!" SOF at 4. The agent adds that defendant was "holding a large American flag, which he drops into the skirmish in an apparent attempt to assist the individuals who are struggling with the USCP officers." SOF at 4.
>
> During the standoff, defendant got so close to the officers "that their names are clearly visible in the video." SOF at 4. While in that position, he "yell[ed]" that "You ain't stopping a million. You ain't gonna hold a million back today. Sorry. Ain't holding a million of us. And there's more!" SOF at 4–5. Shortly after, he shouted "Storm this shit!" two times, as well as shouting "Fucking traitors!" again, asking an officer "How does it feel being a traitor to the country? How does it feel?" and repeating that "You ain't stopping a million of us." SOF at 5. Defendant encouraged the crowd by saying, "Hold the line!" and "Keep 'em coming. Keep 'em coming." SOF at 5. "The last moments captured in the video are of the crowd rushing the USCP officers." SOF at 5.

> Surveillance videos then capture a person, alleged to be the defendant, in the Capitol building. SOF at 5. This person "turns the camera on himself, and says, 'Free Enrique,'" which the agent alleges "is an apparent reference to Enrique Tarrio, the Miami-based leader of the right-wing organization the 'Proud Boys,' who was arrested in the District of Columbia on January 4, 2021." SOF at 6 n.3. This person also repeatedly called out for "Nancy," saying "Nancy come out and play" and repeating her name several times. SOF at 6–7. This taunt was presumably meant for Nancy Pelosi, the Speaker of the United States House of Representatives. Throughout the videos, defendant repeatedly shouted, "whose house?" and "our house!" SOF at 4–7.

Order [Dkt. # 35] at 2–3.

In sum, defendant did not simply come to Washington to attend a rally, and he did not simply walk calmly to the Capitol later to express dissatisfaction with the election; as the government argues in its opposition, he assumed an aggressive posture, taunting the officers and inciting those behind him.

Moreover, there were trips to the District of Columbia before January 6 during which physical confrontations were contemplated in advance or bragged about afterwards. Defendant traveled from his home and workplace in Florida in both November and December of 2020 in connection with protests taking place in the nation's capital. Opp. at 3–4. And he took pains to emphasize to other members of the group that he would not be empty handed.

Defendant messaged, prior to coming to the District in December 2020 that he would be in a protective vest, or "side plates," and that he was "[t]aking a knife as well," adding, "[b]e happy my guns ain't going this time." Opp. at 3-4. He made it clear that being armed "is not for defense"

but "is for offense," explaining, "continue to be fucking peaceful and that's how you end up like Cuba."[1]  *Id.*

And after the November trip, he proudly informed the others about the conduct he engaged in while he was here.  On November 16, 2020 at 3:38 pm, defendant told another person that he'd been in Washington that weekend, and when the other person responded, "[h]ope everything went well with no Antifa fights," he answered, "I smashed a couple of them."  Opp. at 4; *see also id.* (3:44 pm message stating "Just Antifa I got 4 knocked out").

And, notwithstanding the reports of injuries, deaths, and damage to property on January 6, defendant was not chastened by his experience at the Capitol in any way.  He sent a message on January 7 urging others to return:  "We need to go again in full force."  Opp. at 3.[2]  When this suggestion that Mr. Garcia may be back is considered in connection with the foreboding statement he made previously – "Be happy my guns ain't going this time" – and the photograph of firepower that the defendant chose to share on November 21, 2020 with the message, "I have my own gun

---

1   Defendant argues in his reply that "he has the right to protect himself against being stabbed at a politically-charged event[,]"  Reply at 2, but his own statements at the time undermine his current suggestion that he carried the knife for defensive purposes.

2   The government also included an undated screenshot in its opposition in which one person began a discussion with, "We have [redacted]'s real name and address.  We're told to stand down til the J6 fiasco is over.  But after that, we're going after them full force."  Someone using the name CPT GABRIEL GARCIA responded, "You Sir, just made my day!"  Opp. at 5.

show and just bought a flame thrower," the Court finds the condition of release to be both reasonable and necessary.³  Opp. at 3, 5–6.

Defendant emphasizes that he "has no criminal record, is not charged with any crimes of violence or destruction of property, and has been a contributing member of society all of his life." Mot. at 2.  All of these facts are worthy of serious consideration in connection with the assessment of the 3142(g) factors, including the history and characteristics of the defendant, and the fact that the defendant was released on conditions, and has been permitted to travel upon request, *see, e.g.*, Min. Order (June 3, 2022); Min. Order (Dec. 14, 2021); Min. Order (April 21, 2021), reflects that they were, and continue to be, given appropriate weight.⁴

Finally, the fact that the defendant is charged with multiple felonies, and his prior statements about carrying a knife "for offense," differentiate this case from the three misdemeanor cases he points to for comparison.  *See* Mot. at 6, citing *United States v. Logsdon*, No. 22-cr-23-2;

---

3   In his reply, defendant notes that ten months ago, after an article appeared in the news concerning this case, he was the recipient of a suspicious letter containing white powder and an unpleasant message.  Reply at 1; *see also* Ex. 1 to Reply [Dkt. # 81-1].  While this was understandably troubling, the facts surrounding this incident, which was reported to the police with no further repercussions, do not alter the analysis because the inquiry is about the danger to other people and the community, 18 U.S.C. § 3142(c)(1)(B), which has been clearly demonstrated.  Furthermore, the notion that the defendant has genuine ongoing concerns about his safety is undercut by the fact that he held a press conference attempting to further publicize his case just a few months later, in January of 2022.  *See* Jamie Guirola, *'A Lot of Misrepresentation': Miami Proud Boys Member Charged in Riot Defends Entering Capitol*, NBC Miami (Jan. 6, 2022), https://www.nbcmiami.com/news/local/a-lot-of-misrepresentation-proud-boy-charged-in-riot-defends-entering-capitol/2655494/.

4   It is worth emphasizing that defendant's insistence that he has "complied with his conditions of release," Mot. at 2 is an overstatement given the information the Court received, which defendant has never addressed, that he was not honest with Pretrial Services about a trip to Nashville.  *See* Informational Mem. [Dkt. # 24-1] at 2–3; Order [Dkt. # 35] ("9/13 Order") at 8–9.

*United States v. Hand*, No. 22-cr-111-1; and *United States v. Yazdani-Isfehani*, No. 21-cr-543-3.[5] As the Court has observed in the past, "[a]ll of [the] circumstances give rise to legitimate concerns about the defendant's likelihood to engage in similar acts if the opportunity presented itself in the future." 9/13 Order at 8.

That brings us to defendant's second argument: that "the firearm restriction in Mr. Garcia's conditions of release unlawfully infringes upon his Second Amendment rights." Mot. at 4.

The Second Amendment states that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." But [l]ike most rights, the right secured by the Second Amendment is not unlimited." *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008). The Bail Reform Act explicitly includes the restriction on firearms as a potentially appropriate condition of pretrial release, and defendant insists that he is not challenging the constitutionality of the statutory provision on its face. *See* Mot. at 5. Rather, he states that he is challenging "the firearm restriction as applied to Mr. Garcia in this case." *Id.*

The D.C. Circuit took up a similar as-applied challenge in *Medina v. Whitaker,* 913 F.3d 152 (D.C. Cir. 2019). The plaintiff in that case challenged the constitutionality of applying the federal prohibition on possession of a firearm by a felon in 18 U.S.C. § 922(g) to him based on a non-violent conviction from decades before. The D.C. Circuit reiterated that the Supreme Court

---

5    Moreover, unlike the defendant in *United States v. Hand,* No. 22-cr-111-1, this defendant does not live in a rural community and has not identified a need to defend himself against wild animals. And even in that case, the court sharply limited the defendant's access to guns. *See Hand*, Min. Entry (May 18, 2022) ("The Court Orders That The Defendant Retain The .410 Shotgun Only, Must Relinquish Other Firearms, .410 Shotgun Not Be Removed From The Property And Must Be In A Lockbox. 410 Shotgun Only To Be Used In Defense Of Animals.").

had been clear that the Second Amendment right "is not unlimited in scope." *Medina*, 913 F. 3d at 155.

> In *Heller*, and again in *McDonald v. City of Chicago*, the Court explained that the recognition of an individual right to bear firearms does not "cast doubt on longstanding prohibitions on the possession of firearms by felons." The practice of barring convicted felons from possessing firearms is a "presumptively lawful regulatory measure."

*Id.* (citations and brackets omitted). Given that backdrop, the Circuit went on to review the historical evidence and the Supreme Court's statements about felon disarmament laws, and it rejected the plaintiff's contention that the Second Amendment required it to differentiate between dangerous and non-dangerous felons.

> Using an amorphous "dangerousness" standard to delineate the scope of the Second Amendment would require the government to make case-by-case predictive judgments before barring the possession of weapons by convicted criminals, illegal aliens, or perhaps even children. We do not think the public, in ratifying the Second Amendment, would have understood the right to be so expansive and limitless. At its core, the Amendment protects the right of "law-abiding, responsible citizens to use arms in defense of hearth and home." *Heller*, 554 U.S. at 635, 128 S.Ct. 2783. Whether a certain crime removes one from the category of "law-abiding and responsible," in some cases, may be a close question. . . . Those who commit felonies however, cannot profit from our recognition of such borderline cases. For these reasons, we hold that those convicted of felonies are not among those entitled to possess arms.

*Id.* at 159–160. The Court then found that "[t]o prevail on an as-applied challenge, Medina would have to show facts about his conviction that distinguishes him from other convicted felons encompassed by the [statute's] prohibition." *Id.* at 160.

The reasoning underlying *Medina* applies here as well. The Bail Reform Act, like § 922(g), carves out a narrow circumstance in which the right to bear arms can be reasonably curtailed, but unlike § 922(g), the Bail Reform Act also builds in an individualized predictive determination in which dangerousness is specifically considered. *See* 18 U.S.C. § 3142(g)(4). For purposes of the

as-applied challenge, defendant has failed to come forward with facts that distinguish him from others who have been released subject to the same condition. This defendant may have a history of employment, the lack of a criminal record, and prior military service in his favor, but the condition is more than justified by the allegations of dangerous behavior on January 6 and the evidence of his bringing weapons to confrontations associated with protests in the District of Columbia in the past and his threat to escalate from knives to firearms in the future.

As part of his argument, defendant posits that it is only "unvirtuous" citizens, including "those convicted of crimes punishabl[e] by terms of imprisonment in excess of a year," who "may be stripped of their Second Amendment rights" via court processes. Mot. at 5. Therefore, he submits, since "[h]e has never been convicted of anything," *id.*, he should not be included in this group; "[h]e is not a 'prohibited person' under 18 U.S.C. § 922(g)," which lists groups of people that may not possess a firearm. Mot. at 5.

Defendant is correct that his indictment did not serve to divest him automatically of his Second Amendment rights under section 922(g). But that is beside the point, because that is not what happened in this case; the defendant has not been adjudged to be "a 'prohibited person' under 18 U.S.C. § 922(g)." Mot. at 5. Instead, the condition was imposed, after a hearing, pursuant to 18 U.S.C. § 3142(c)(1)(B)(viii). Nothing in *Heller* or *Medina* suggests that section 922(g) is the only permissible exception to an individual's "not unlimited" rights under the Second Amendment, and the defendant has not pointed to any opinion in which a court has come to that conclusion.

And defendant's suggestion that the Second Amendment grants every person an unlimited right to possess firearms as long as they have never been convicted of a felony is foreclosed by *Heller* and the Supreme Court's subsequent opinions, including *McDonald v. Chicago*, 561 U.S. 742 (2010) and *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022). The

Supreme Court has explicitly acknowledged that convicted felons are not the only people who may be disarmed. According to *Heller*, 554 U.S. at 626–27, "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." *See also New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2162 (2022) (Kavanaugh, J., concurring) (quoting *Heller* and noting that "[w]e identify these presumptively lawful regulatory measures only as examples; our list does not purport to be exhaustive"); *id.* at 2157 (Alito, J., concurring) ("Nor have we disturbed anything that we said in *Heller* or *McDonald*").[6]

Defendant's argument that the Second Amendment prohibits this Court from exercising its reasoned discretion under the Bail Reform Act to assure the safety of the community merely because he has never been convicted of a felony is inconsistent with what the Supreme Court and the D.C. Circuit have said about the Second Amendment to date. Therefore, the Court finds that the condition of release is not unconstitutional as applied to defendant Garcia.

---

6       The D.C. Circuit has also already recognized that "unvirtuous citizens" is a larger group than convicted felons. *See Medina*, 913 F.3d at 159–60 (declining to "accept this [virtuous citizen] theory outright," but also noting that even under the virtuous citizen theory, "the scope of the Second Amendment was understood to exclude more than just individually identifiable dangerous individuals," including groups such as "illegal aliens and juveniles," "the mentally imbalanced," and certain "misdemeanants.").

## CONCLUSION

Since the Court finds that the condition prohibiting the defendant from possessing firearms is necessary to ensure the safety of the community, and the condition comports with the Constitution, the motion to alter this condition of his release is **DENIED**.

*Amy B Jackson*

AMY BERMAN JACKSON
United States District Judge

DATE:  July 26, 2022