## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | |
| | ) | Crim. Action No. 21-0129 (ABJ) |
| GABRIEL AUGUSTIN GARCIA, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Defendant Garcia has moved to dismiss Count Two of the superseding indictment.  Mot. to Dismiss Count Two of the Superseding Ind. and Mem. of Law [Dkt. # 67] ("MTD").  The government opposes the motion.  Gov't Opp. to MTD [Dkt. # 68] ("MTD Opp.").  For the following reasons, the motion is **DENIED**.

## BACKGROUND

Defendant is charged with six counts in a superseding indictment arising out of his presence at the U.S. Capitol on January 6, 2021:

(1) Count One:  Civil Disorder and Aiding and Abetting, in violation of 18 U.S.C. §§ 231(a)(3) and (a)(2);

(2) Count Two:  Obstruction of an Official Proceeding and Aiding and Abetting, in violation of 18 U.S.C. §§ 1512(c)(2) and 2;

(3) Count Three:  Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1);

(4) Count Four:  Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2);

(5) Count Five:  Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D); and

1

(6) Count Six:   Parading, Demonstrating, or Picketing in a Capitol
Building, in violation of 40 U.S.C. § 5104(e)(2)(G).

Ind. [Dkt. # 44] at 2–4.

The allegations in this case have been previously summarized:

> According to the complaint filed by Special Agent Michael F. Biscardi,
> defendant took videos of himself that day.  Statement of Facts [Dkt. # 1-1]
> ("SOF") at 4.  In one video, defendant turned the camera on himself and
> noted that "We just went ahead and stormed the Capitol.  It's about to get
> ugly."  SOF at 4.  The agent described the video as "depict[ing] an
> aggressive confrontation with U.S. Capitol Police officers, who are trying
> to prevent the crowd from advancing."  SOF at 3–4.  During the
> confrontation, defendant is heard shouting at police officers attempting to
> defend the building:  "You fucking traitors!  You fucking traitors!  Fuck
> you!"  SOF at 4.  The agent adds that defendant was "holding a large
> American flag, which he drops into the skirmish in an apparent attempt to
> assist the individuals who are struggling with the USCP officers."  SOF at
> 4.
>
> During the standoff, defendant got so close to the officers "that their names
> are clearly visible in the video."  SOF at 4.  While in that position, he
> "yell[ed]" that "You ain't stopping a million.  You ain't gonna hold a
> million back today.  Sorry.  Ain't holding a million of us.  And there's
> more!"  SOF at 4–5. Shortly after, he shouted "Storm this shit!" two times,
> as well as shouting "Fucking traitors!" again, asking an officer "How does
> it feel being a traitor to the country?  How does it feel?" and repeating that
> "You ain't stopping a million of us."  SOF at 5.  Defendant encouraged the
> crowd by saying, "Hold the line!" and "Keep 'em coming.  Keep 'em
> coming."  SOF at 5.  "The last moments captured in the video are of the
> crowd rushing the USCP officers."  SOF at 5.
>
> Surveillance videos then capture a person, alleged to be the defendant, in
> the Capitol building.  SOF at 5.  This person "turns the camera on himself,
> and says, 'Free Enrique,'" which the agent alleges "is an apparent reference
> to Enrique Tarrio, the Miami-based leader of the right-wing organization
> the 'Proud Boys,' who was arrested in the District of Columbia on January
> 4, 2021."  SOF at 6 n.3.  This person also repeatedly called out for "Nancy,"
> saying "Nancy come out and play" and repeating her name several times.
> SOF at 6–7.  This taunt was presumably meant for Nancy Pelosi, the
> Speaker of the United States House of Representatives.  Throughout the
> videos, defendant repeatedly shouted, "whose house?" and "our house!"
> SOF at 4–7.

2

Order [Dkt. # 35] at 2–3.

Defendant has moved to dismiss Count II, which alleges that:

> On or about January 6, 2021, within the District of Columbia and elsewhere, GABRIEL AUGUSTIN GARCIA, also known as "Gabriel Agustin Garcia," attempted to, and did, corruptly obstruct, influence, and impede an official proceeding, that is, a proceeding before Congress, specifically, Congress's certification of the Electoral College vote as set out in the Twelfth Amendment of the Constitution of the United States and 3 U.S.C. §§ 15–18.

Ind. at 2.

## LEGAL STANDARD

The Federal Rules of Criminal Procedure require that an indictment must consist of "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). The charging document "need only inform the defendant of the precise offense of which he is accused so that he may prepare his defense and plead double jeopardy in any further prosecution for the same offense." *United States v. Williamson*, 903 F.3d 124, 130 (D.C. Cir. 2018), quoting *United States v. Verrusio*, 762 F.3d 1, 13 (D.C. Cir. 2014); *see United States v. Resendiz-Ponce*, 549 U.S. 102, 108 (2007). "It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as 'those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished.'" *Hamling v. United States*, 418 U.S. 87, 117 (1974), quoting *United States v. Carll*, 105 U.S. 611, 612 (1882).

A criminal defendant may move to dismiss an indictment before trial based on a "defect in the indictment," Fed. R. Crim. P. 12(b)(3)(B), including constitutional challenges. *See United States v. Eshetu*, 863 F.3d 946, 952 (D.C. Cir. 2017), *vacated in part on reh'g on other grounds*, 898 F.3d 36 (D.C. Cir. 2018). "When considering a motion to dismiss an indictment, a court

assumes the truth of those factual allegations." *United States v. Ballestas*, 795 F.3d 138, 149 (D.C. Cir. 2015), citing *Boyce Motor Lines v. United States*, 342 U.S. 337, 343 n.16 (1952). A dismissal of an indictment "is granted only in unusual circumstances," because "a court's 'use[ ] [of] its supervisory power to dismiss an indictment . . . directly encroaches upon the fundamental role of the grand jury.'" *Id.* at 148, quoting *Whitehouse v. U.S. Dist. Court*, 53 F.3d 1349, 1360 (1st Cir. 1995).

## ANALYSIS

This defendant is not the first to question the validity of indictments charging January 6 defendants under section 1512(c)(2). This Court has already addressed the legal issues raised here, *see generally United States v. Williams*, No. 21-cr-618, 2022 WL 2237301 (D.D.C. June 22, 2022), and, as noted in that opinion, similar challenges have been rejected by every court in this district to consider them – with one exception. *See United States v. Sandlin*, No. 21-cr-88, 2021 WL 5865006, at *3–5, *10–13 (D.D.C. Dec. 10, 2021); *United States v. Caldwell*, No. 21-cr-28, 2021 WL 6062718, at *4–11 (D.D.C. Dec. 20, 2021); *United States v. Mostofsky*, No. 21-cr-138, 2021 WL 6049891, at *9–11 (D.D.C. Dec. 21, 2021); *United States v. Montgomery*, No. 21-cr-46, 2021 WL 6134591, at *4–10, *18–23 (D.D.C. Dec. 28, 2021); *United States v. Nordean*, No. 21-cr-175, 2021 WL 6134595, at *4–12, *14–19 (D.D.C. Dec. 28, 2021); Order, *United States v. Reffitt*, No. 21-cr-32 (D.D.C. Dec. 29, 2021) [Dkt. # 81]; *United States v. McHugh*, No. 21-cr-453, 2022 WL 296304, at *4–12, *22 (D.D.C. Feb. 1, 2022); *United States v. Grider*, No. 21-cr-22, 2022 WL 392307, at *3–8 (D.D.C. Feb. 9, 2022); *United States v. Bozell*, No. 21-cr-216, 2022 WL 474144, at *1–7 (D.D.C. Feb. 16, 2022); *United States v. Robertson*, No. 21-cr-34, 2022 WL 969546, at *3–6 (D.D.C. Feb. 25, 2022); *United States v. Andries*, No. 21-cr-93, 2022 WL 768684, at *3–12 (D.D.C. Mar. 14, 2022); *United States v. Puma*,

No. 21-cr-454, 2022 WL 823079, at *4–14 (D.D.C. Mar. 19, 2022); *United States v. McHugh*, No. 21-cr-453, 2022 WL 1302880, at *2–12 (D.D.C. May 2, 2022) ("*McHugh II*"); *United States v. Bingert*, No. 21-cr-91, 2022 WL 1659163, at *3–11 (D.D.C. May 25, 2022); *United States v. Fitzsimons*, No. 21-cr-158, 2022 WL 1698063, at *3–13 (D.D.C. May 26, 2022); *but see United States v. Miller*, No. 21-cr-119, 2022 WL 823070 (D.D.C. Mar. 7, 2022).

18 U.S.C. § 1512(c) states:

> Whoever corruptly –
>
> (1) alters, destroys, mutilates, or conceals a record, document, or other object . . . with the intent to impair the object's integrity or availability for use in an official proceeding; or
>
> (2) otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so,
>
> shall be fined under this title or imprisoned not more than 20 years, or both.

Defendant argues that "other D.C. courts in January 6 cases have held that the word "otherwise" links subsection (c)(1) with subsection (c)(2), in that subsection (c)(2) is read as a catchall for the prohibitions described in subsection (c)(1)."   MTD at 3, citing *Miller*, 2022 WL 823070.  He asks this Court to "follow [this] holding[] and reject the Government's novel, expansive interpretation of 18 U.S.C. § 1512(c)." *Id.*

In *United States v. Miller*, the court found that "there are two plausible interpretations of [18 U.S.C. § 1512(c)(2)]:  either § 1512(c)(1) merely includes examples of conduct that violates § 1512(c)(2), or § 1512(c)(1) limits the scope of § 1512(c)(2)."  2022 WL 823070, at *15.  The more plausible interpretation, the court reasoned, is the latter, and therefore it found that the indictment failed to allege a violation of 18 U.S.C. § 1512(c)(2).  *Id.*; *see also United States v. Fischer*, No. 21-cr-234, 2022 WL 782413, at *4 (D.D.C. Mar. 15, 2022) ("The Court recently

concluded [in *Miller*] that the word 'otherwise' links subsection (c)(1) with subsection (c)(2) in that subsection (c)(2) is best read as a catchall for the prohibitions delineated in subsection (c)(1).").

The *Miller* court relied heavily on *Begay v. United States*, 553 U.S. 137 (2008), *abrogated on other grounds by Johnson*, 576 U.S. 591 (2015), and *Yates v. United States*, 574 U.S. 528 (2015) (plurality opinion). In *Begay*, the Supreme Court considered whether drunk driving was a "violent felony" for the purposes of the sentencing provision imposing a mandatory minimum term on an offender with three prior convictions "for a violent felony," as that term was defined in 18 U.S.C. § 924(e)(2)(B)(ii) ("the term 'violent felony' means any crime punishable by imprisonment for a term exceeding one year . . . that-- . . . is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another"). The Court concluded that the examples listed before "otherwise" limited the scope of the residual clause to similar crimes, and that drunk driving fell "outside the scope" of the ACCA. *Begay*, 553 U.S. at 142–48.

The *Miller* court reasoned that, because "the *Begay* majority opinion rejected the government's argument 'that the word 'otherwise' is *sufficient* to demonstrate that the examples [preceding 'otherwise'] do not limit the scope of the clause [following 'otherwise'],'" 2022 WL 823070, at *9 (alterations and emphasis in original), section 1512(c)(1) most likely also limits the scope of section 1512(c)(2). *Id.* at *9–11.

This Court respectfully disagrees with *Miller's* reasoning, and along with other courts in the district, declines to follow it. The Court is not basing its determination on a finding that the mere appearance of the word "otherwise" is sufficient to answer the question and establish that the first clause, section 1512(c)(1), was not meant to serve as a limit on the second clause, section

1512(c)(2).   Rather, considering the language and structure of the statute, it agrees with the reasoning in the other decisions in this district denying motions to dismiss section 1512(c)(2) counts and rejecting the *Miller* court's application of *Begay*.  *See McHugh II*, 2022 WL 1302880, at *5–6; *Bingert*, 2022 WL 1659163, at *8.

For one thing, the structure of section 1512(c)(2) does not parallel the structure of the ACCA, and "otherwise" in section 1512(c)(2) does not immediately follow a list of examples. And sections 1512(c)(1) and (c)(2) – which prohibit different types of conduct – do not overlap in the same way that the ACCA clauses overlapped, rendering a conclusion that what follows the term "otherwise" is an extension of the prior provision less likely.  *Compare* 18 U.S.C. § 1512(c), *with* 18 U.S.C. § 924(e)(2)(B).   Indeed, the Supreme Court noted in *Begay* that "the word 'otherwise' *can* (we do not say *must* . . .) refer to a crime that is similar to the listed examples in some respects but different in others . . . ."  *Begay*, 553 U.S. at 144 (emphasis in original).

As the court observed in *McHugh II*, the way Congress drafted the two provisions indicates that they were intended to target different conduct:

> Rather than a continuous list with a general term at the end, § 1512(c) contains two separately numbered paragraphs, with a semicolon and a line break separating the "otherwise" clause in paragraph (c)(2) from the preceding terms in paragraph (c)(1).   Furthermore, paragraph (c)(2) is grammatically distinct from paragraph (c)(1).   Although the two provisions share a subject and adverb ("whoever corruptly"), paragraph (c)(2) contains an independent list of verbs that take a different object ("any official proceeding") from the verbs in paragraph (c)(1) (which take the object "a document, record, or other object"). . . . In short, rather than "A, B, C, or otherwise D," section 1512(c) follows the form "(1) A, B, C, or D; or (2) otherwise E, F, or G."

2022 WL 1302880, at *5.

As for *Miller*'s finding that "[r]eading § 1512(c)(2) alone is linguistically awkward," 2022 WL 823070, at *6, this is not the case if "otherwise" is read to "'signal[] a shift in emphasis'

. . . from actions directed at evidence to actions directed at the official proceeding itself." *Montgomery*, 2021 WL 6134591, at *12, quoting *Tex. Dep't of Hous. & Cmty. Affs. v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519, 520 (2015).  This is also not the case if "otherwise" is taken to mean "in a different way."  *See McHugh II*, 2022 WL 1302880, at *4.  Under either interpretation, the meaning of the statute is clear:  a person can violate section 1512(c)(2) through means that differ from document destruction, and the term "otherwise" does not limit the prohibition in section 1512(c)(2) to conduct described in section 1512(c)(1).  As a result, the Court will not dismiss the indictment under defendant's residual clause theory.

## CONCLUSION

Defendant's motion to dismiss is **DENIED**.


AMY BERMAN JACKSON
United States District Judge


DATE:  July 26, 2022