UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

CASE NO.: 21-CR-129

Gabriel Garcia,

        Defendant.

_____/

### DEFENDANT'S RESPONSE TO PRETRIAL SERVICES' REPORT

COMES NOW, the Defendant, Gabriel Garcia, and files his response to the Pretrial Services' Report and states the following:

**I.  Pretrial Services neither required nor asked for a precise itinerary to include his *activities outside D.C.,* and there is a precedent for this, because they did not require he detail his activities outside D.C. during his last Court-approved visit to D.C. and the surrounding areas**

Mr. Garcia did not violate any of his pretrial conditions. He did not violate his curfew; he provided a precise itinerary, according to the stand for itineraries previously provided to Pretrial Services, and he attended a substantial portion of the *United States v. Gossjankowski* trial on March 3, contrary to media reports that all he did was brashly schmooze with J6'ers at the "Conservative Action Coalition" Conference ("CPAC") and misled a federal court.

Critically, Pretrial Services neither required nor asked for a precise itinerary that included his activities outside D.C., and the Court's order did not specifically ask for this either; moreover, there is a precedent for this exact interpretation, because Pretrial Services did not require a precise itinerary to include his activities while outside D.C., during his last Court-approved visit to D.C. and the surrounding areas.

Therefore, it cannot be said that Mr. Garcia violated the Court's order to provide his "precise itinerary" by not stating he was going to CPAC. *United States v. Manafort*, 897 F.3d. 340 (D.C. Cir. 2018) (reasoning that a court should not punish someone for violating an order if the terms of that are unclear). In *Manafort*, the court found that Congress intended for narrow readings of conditions of release in favor of the accused. *Id.* at 346. (stating Congress wanted conditions of release to be: "*clear and specific* to serve as guide for the person's conduct." (emphasis in original).

Primarily, Mr. Garcia had requested to travel to the District of Columbia to observe two J6 jury trials that were occurring: *United States v. Gossjankowski*, 21-CR-123-PLF, and *United States v. Tarrio, et al.,* 21-CR-175-TJK; he later requested to also view the bench trial occurring before the Court that week. As he has done every time he traveled, he provided a precise itinerary to his pretrial officer stating his exact travel plans, manner of travel, and where he was staying. Mr. Garcia arrived in Arlington at around 4:15 PM on March 2. Counsel was already present at the *Gossjankowski* trial observing the final portion of jury selection.

Counsel texted Mr. Garcia that it was not worth coming over to the courthouse to merely observe the final portion of the attorneys and the court pick the jury, as they go through their peremptory challenges; and that portion is not even audible to court observers. Further, the Court indicated in its order that its bench trial was stopping at 4 PM on March 2.

That Mr. Garcia then went to CPAC in Maryland, should be treated no differently than if he went to a restaurant, church services, or a movie theater in Maryland and posted that on social media—he was not in D.C. Further, a plain reading of the 8 PM curfew language in the Court's order was: the curfew only applied if he was also lodging in D.C. too, which he was not. And there was a precedent for this interpretation, as this exact issue came up the last time he traveled

to D.C., pursuant to the Court's order. Indeed, counsel specifically told his pretrial officer that a plain reading of the Court's order from June 2022 was that the curfew only applied if he lodged in D.C. (See counsel's email to Pretrial Services at Exhibit 1). When he was out past 8 PM last summer in Virginia, at no time did Pretrial Services challenge or claim that Mr. Garcia was violating curfew. Similarly, during his recent trip to D.C. when he was out past 8 PM in Maryland, his pretrial officer did not claim he was violating the curfew.

While at CPAC, Mr. Garcia was working on his defense to these charges. Indeed, he asked Congressman M. Gaetz, who is from Mr. Garcia's home state, how and when could his defense team access the 40,000 hours of unreleased video Capitol Police have. Also, he and his counsel met, and conferred extensively with, attorney Ivan Raiklin, whom they may retain for assistance and trial preparation. Mr. Raiklin had spoken to Mr. Garcia on March 2 at CPAC, and he told Mr. Garcia to return the next day with his counsel to discuss at length defense strategies, which they did. On March 2 and March 3, CPAC's programs concluded at 5 PM each day; Mr. Garcia then went to and ate at a nearby restaurant on March 2, and he ate at a restaurant at the Gaylord Hotel, where CPAC was held, on March 3.

On Friday, both the *Tarrio et al*. trial and the bench trial before this Court were not holding proceedings. Thus, Mr. Garcia and counsel attended the *Gossjankoswki* trial all morning and in the afternoon until they broke for lunch. The next day he traveled back to Miami and checked in with his pretrial officer upon arriving. At no point did she mention that he was in violation or non-compliance. (See email to Pretrial Services Officer attached as Exhibit 2).

  II. **Mr. Garcia has always substantially complied with the Court's travel orders and his pretrial conditions**

The issue seems to have arisen when the media picked up on his social media postings at CPAC. Certain media outlets then crafted a narrative that Mr. Garcia came to D.C. to go to

CPAC and never went to the courthouse, merely saying that as a pretext[1]. However, he did go to the courthouse and observed substantial portions of the trial. Importantly, Mr. Garcia has always complied with his release conditions and travel orders of this Court. Not once has Pretrial Services accused him of violating any release conditions, violating a curfew, or not providing a precise enough itinerary In addition, prior to this trip, neither the Government nor Pretrial Services have filed for a violation of a release condition. The issue seems to arise when he posts on social media when allowed to travel, and this irks certain media outlets that a J6 defendant is traveling and posting his way through it[2]. Undoubtedly, he has tried numerous times to have the GPS monitor removed by this Court, and the Court has declined each time.

### III. There is not clear and convincing evidence that Mr. Garcia violated any condition of release under 18 U.S.C. § 3148

In sum, there is not clear and convincing evidence, as required under § 3148, that Mr. Garcia violated any release conditions by going to CPAC. *See U.S.A. v. Wilks*, 15 F.4th 842 (7th Cir. 2021) (reversing district court for detaining defendant for violation of pretrial release conditions based on court's sua sponte determination that defendant was not authorized to go anywhere he wanted while he was out of town on court-approved trip, where defendant went to

---

[1] The day before his trip Mr. Garcia posted on social media obvious photoshopped images of him on Donald Trump's airplane, claiming he was traveling to D.C. on the plane. Incredibly, in her ongoing crusade to expose and humiliate Mr. Garcia, Miami New Times reporter Alex DeLuca naively ran with this story about traveling to CPAC on Trump's plane as if it was true; the reporter even asked counsel to confirm if Mr. Garcia was traveling in Trump's plane to D.C. To which, sensing another yellow-journalistic hit peace was forthcoming, counsel facetiously replied that he could not confirm because of "security measures." Amazingly, DeLuca published counsel's comment as if it was a serious reply. While the Government suspected his posts might be photoshopped, they claim Mr. Garcia was still being disingenuous (but as to whom it is unclear, the World Wide Web?) by claiming he was flying to CPAC. His social media postings were clear fakes; and although his social media posts, generally, may be crass, obnoxious, brazen, and bad form, Mr. Garcia still has his First Amendment rights to post on the internet. He was not under any gag order.

[2] The Court's order specifically prohibited Mr. Garcia from any contact with the defendants of the three trials he was allowed to observe. There is no allegation that he had any contact with any of them. That he ran into some J6 defendants at CPAC is not a violation of any of his release conditions, and Pretrial Services is not alleging this violation anyway.

bar at 2 AM where a murder occurred). More specifically, when a defendant on pretrial release is alleged to have violated a condition of his release, the Government may move to revoke release under 18 U.S.C. § 3148 as a sanction for the violation. To revoke and order a defendant detained after a hearing, the court must find that there is:

> (A) probable cause to believe that the person has committed a Federal, State, or local crime while on release; *or*
> (B) clear and convincing evidence that the person has violated any other condition of release; *and*
> (2) finds that—
> (A) based on the factors set forth in section 3142(g) of this title, there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community; or
> (B) the person is unlikely to abide by any condition or combination of conditions of release.

§ 3148(b) (emphases added). In this regard, there has never been an allegation that Mr. Garcia poses any danger to the community or is a flight risk. Of course, there is no allegation he committed any crime while on release. As to his history and characteristics, Mr. Garcia has no criminal history, served honorably as an officer in the Army, including a tour in Iraq, and has family and three minor children in the Miami area, where he is actively involved in their daily lives. *See generally United States v. Mattocks*, 2022 WL 16635245 (D.D.C. 2022) (considering 18 U.S.C. § 3142 factors in § 3148 proceeding to determine detention).

Certainly, the Court has the discretion to alter his release conditions. It can place him on house arrest—full lockdown, prohibit all further travel, or prohibit any travel outside the Southern District of Florida. Further, the Government has not moved for a violation with the filing of an affidavit, but of course D.C. Pretrial Services is requesting judicial action by recommending Mr. Garcia be removed from their supervision. There seems to be a disconnect between D.C.'s Pretrial Services and Miami's, because his Miami Pretrial Officer is not the one

who filed the current violation. Finally, Mr. Garcia submits that at no time did he intend to violate his release conditions, and counsel further asserts that had he believed any behavior constituted a violation, he would have advised Mr. Garcia.

Respectfully submitted,

/s/Aubrey Webb
Law Offices of Aubrey Webb
55 Merrick Way, Suite 212
Coral Gables, Florida 33134
305-461-1116
Email:  aubrey@aqwattorney.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was efiled to the Office of the Clerk, United States District Court, District of Columbia, 333 Constitution Ave., N.W. Washington D.C. 20001, Room 1225 and to the Office of the United States Attorney, 555 4th St N.W., Washington D.C. 20530, on March 16, 2023.

/s/Aubrey Webb