UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

    Plaintiff,
v.                                              CASE NO. 21-cr-129-ABJ

GABRIEL GARCIA,

    Defendant.
_____/

## GABRIEL GARCIA'S SENTENCING MEMORANDUM, MOTION FOR DOWNWARD DEPARTURE AND REQUEST FOR A DOWNWARD VARIANCE

Defendant, GABRIEL GARCIA, through undersigned counsel, 1) submits the following sentencing memorandum, 2) requests a downward variance pursuant to 18 U.S.C § 3553(a) and in accordance with the recommendation by the Probation Office, and 3) moves for a downward departure pursuant to U.S.S.G. §5H1.11.

## INTRODUCTION

**Gabriel Garcia** stands before this Court for sentencing after having been convicted, at a stipulated bench trial, of only one offense of the myriad of offenses lodged against him by the government. He asks

1

this Court to vary slightly below the advisory guidelines and, *as recommended by the Probation Office,* impose a sentence of **twenty-four (24) months probation** as a just sentence for his conduct that day. To be sure, Mr. Garcia engaged in wrongful behavior that day and recognizes he will suffer the consequences of his conduct.

Mr. Garcia, like many, honestly believed that the 2020 election was being stolen. His public posts on social media, both before and after January 6th, confirm that. For someone whose immigrant family lost everything in their homeland to communism and who valiantly defended our country in a time of war, he sincerely believed that he was protesting in the name of liberty and freedom. His motives, however misguided others may feel, were based on those values that this country celebrates and that the First Amendment enshrines. What is more American than fervently defending democracy—even from one's own government—and perhaps especially then? And how ought we punish someone who, during such a protest, engaged in criminal behavior that was consequential *only* because of where it occurred *and* because it was replicated by thousands? To properly answer these questions this Court must confront issues central to what it means to be American. And in

recognizing Mr. Garcia's indisputable devotion to his country, he asks this Court to depart from the advisory guidelines and/or slightly vary from them by imposing a sentence slightly below the advisory range and less than the government's anticipated request. Mr. Garcia submits that the sentence recommended by the Probation Office of twenty-four months (24) probation would be "a sentence sufficient, but not greater than necessary" to achieve justice in this case.

On one hand, the Court could examine, in isolation, the actions of Mr. Garcia, who entered and remained on restricted grounds and then briefly entered the Capitol building through an open door. Alone, his actions were insignificant and would hardly be worthy of a lengthy term of imprisonment. It is *only* because he was a part of an unexpectedly large throng of people that day that his actions had any meaningful impact on society. But his participation in that group also mitigates his culpability. He acted like thousands of others did in a prolonged moment of uncertainty, among thousands of like-minded Americans, in a unique circumstance rarely faced by this country. No right-minded person believes that sending Mr. Garcia to a lengthy term of imprisonment will help to stop another January 6 from ever

occurring, nor is such a sentence necessary for Mr. Garcia, who, unlike many present that fateful day, gave so much to this country and at such a significant personal cost. Such a sentence recognizes the humanity of Mr. Garcia as an individual, not merely as one of countless rioters. Such a sentence is commensurate with this Court's responsibility under 18 U.S.C. 3553(a). And such a sentence is commensurate with the grace with which the victors ought to treat the vanquished. Such a sentence is, in this case, twenty-four (24) months of probation.

1. **The Court Should Depart from the Sentencing Guideline Pursuant to U.S.S.G. §5H1.11 Based upon his Military Service and the Consequences of that Service.**

Section 5H1.11 of the United States Sentencing Guidelines provides, in pertinent part:

> Military service may be relevant in determining whether a departure is warranted, if the military service, individually or in combination with other offender characteristics, is present to an unusual degree and distinguishes the case from the typical cases covered by the guidelines.

In considering the relevance of military service to sentencing, courts are confronted with many issues. The length, nature, context, and experience of military service can vary widely. One defendant may have served entirely within the United States, perhaps in an

4

administrative post like that of a civilian employee, while another, like Gabriel Garcia, may have served under harsh and dangerous combat conditions abroad.

Gabriel Garcia enlisted in the United States Army at age 21. He was deployed to Iraq to counter the insurgency that opposed the U.S-led occupation of that country. During this deployment, he experienced, among other things, both direct and indirect fire, during both daylight and evening hours. He was shot at while driving. He experienced a young Iraqi girl's parents who were hacked to death by the enemy.

[redacted]

Clearly, the personal sacrifice Gabriel Garcia made in service of our country is precisely the type of service contemplated by this guideline provision, ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ buttress this provisions applicability as well. Accordingly, the Defendant is entitled to, at least, a one level departure of the guideline range from Level 9, Zone B, to Level 8, Zone A.

It should be noted that, in addition to warranting a departure, military service of Garcia's type also can and will justify a downward sentencing variance. *United States v. Davis*, 20 F.4th 1217 (8th Cir 2021)(downward variance from 46-57 months to 2 months' time served where defendant had zero criminal history and served honorably in the US Marines upheld for conviction of attempted coercion or enticement of a minor).

### 2. The Court Should Vary Downward Based Upon Mr. Garcia's History and Characteristics.

On January 6, 2021, thousands of people came to Washington, D.C., at the request of the then-President of the United States, to attend the "Stop the Steal" rally at the Ellipse. There, several prominent people spoke. The speakers included, among others, the President, sitting

members of Congress, a law professor, the President's attorney, and the Texas Attorney General. And, consistent with the theme of the rally, the speakers complained about a stolen election. At the end of the rally, the President urged the attendees to go to the Capitol to "make your voices heard." Mr. Garcia never attended that rally. On the contrary, he overslept on January 6. Prior to 2:00 p.m. he was drinking coffee at a restaurant on Black Lives Matter Plaza. That is when he first learned protesters had moved from the Ellipse to the Capitol. He was among the thousands who walked to the U S Capitol that day. Mr. Garcia is deeply remorseful of his conduct that day and will spend the rest of his life regretting his actions.

To be clear, however, Mr. Garcia ***did not*** travel from Miami, Florida, to Washington, D.C., to unlawfully enter the Capitol building, and certainly not to obstruct law enforcement officers. Instead, and as he had done twice previously, he came from Miami to protest the perceived stolen election.

There is no dispute that Mr. Garcia entered onto Capitol Grounds and acted inappropriately by using foul language inside that building. While Mr. Garcia's conduct was wrongful, it is

7

important to note that he did not carry a weapon or even convert an everyday item into a weapon, nor did he punch, kick, or spray any officer with an irritant. He did not come dressed in or carrying any form of tactical gear.  He did not conceal his identity with a mask, scarf, or hat.  On the contrary, he wore normal civilian clothing.  And he had ***no preconceived intent*** to go to the Capitol or engage with law enforcement officers that day.  His enemy is Antifa and other left-wing agitators who, he believes, if given the chance, would lead this country on the road to communism similar to what occurred to his family in Cuba.

Mr. Garcia's actions on January 6th were clearly an aberration. Despite a challenging and difficult childhood growing up first, without a father and second, with an abusive step-father, Garcia has had no prior contact with the law. His biological father abandoned him and his alcoholic stepfather physically and mentally abused him (and his mother).  Despite these hardships, Gabriel Garcia has, until the events of January 6th, led a completely law-abiding life.

Moreover, notwithstanding the instability of his childhood, Mr.

Garcia has forged ahead, patriotically enlisting in the armed services to protect us all, and rising to the rank of Captain.

As the Court well knows, 18 U.S.C. § 3553(a) mandates that a court "impose a sentence sufficient, but not greater than necessary, to comply with" federal sentencing goals by looking to the statutory factors listed under § 3553. And given Mr. Garcia's challenging childhood, his patriotic military career, his lack of prior involvement with the criminal justice system, and remorse for his actions, and his aberrational conduct on January 6th all warrant a downward variance from the advisory guideline range.

### 3. The Court Should Vary Downward Because Mr. Garcia's Conduct is Not Deserving of a Prison Sentence.

Gabriel Garcia is the father of three (3) beautiful children, all below the age of 16. He communicates with them daily.

Mr. Garcia did not bring weapons with him when he came to

Washington on January 6. He did not bring body armor with him, zip ties, or radio equipment. He did not bring a uniform, gas mask, or truncheon. He came to protest the perceived downward path of his country. Mr. Garcia's lack of preparation for any assault helps to show that he was not planning to engage in any criminal actions that day. This absence of premeditation certainly mitigates his culpability. More importantly, the fact that Mr. Garcia did not bring a weapon demonstrates that his offense was merely one of opportunity—and an opportunity unique in this country's history.

Moreover, Mr. Garcia did not engage in physical acts of violence. This Court recognized it by allowing Mr. Garcia to remain free pending sentencing.

Mr. Garcia had several opportunities to engage in physical violence with law enforcement officers. And rather than pound against the line of officers, Mr. Garcia offered a bottle of water to an officer. He did not grab officers by their masks or shields. He did not assault them with bicycle racks or flag poles. He did not throw objects at them or bludgeon them.

Faced with perhaps the most violent actions that day, Mr. Garcia

10

knew that he should not remain there. And he left. He did what we would want people to do. He acted consistent with those around him who were not engaging in overt acts of violence. When it became apparent that he should leave and that being at the Capitol was unlawful and wrong, he left.

### 4. Based on the Foregoing, the Court Should Vary Downward in Fashioning a Just Punishment for Mr. Garcia

In imposing "just punishment" for an offense, a sentencing court should not disregard the additional penalties and hardships that will accompany Mr. Garcia's conviction—the loss of his civil rights ***including the likely loss of VA benefits***—and his low risk of recidivism. *See United States v. Urbina*, 2009 WL 565485, *3 (E.D. Wis. Mar. 5, 2009) (considering low risk of recidivism indicated by defendant's lack of criminal record, positive work history, and strong family ties); *United States v. Cabrera*, 567 F. Supp. 2d 271, 279 (D. Mass. 2008) (granting variance because defendants "with zero criminal history points are less likely to recidivate than all other offenders"). Finally, in considering a variance in this case, this Court should consider the length of time, *his entire life*, that Mr. Garcia—

who is 43 years old—abstained from criminal conduct prior to his commission of the instant offense. *United States v. Ward*, 814 F. Supp. 23, 24 (E.D. Va. 1993) (granting departure based on defendant's age as first-time offender since guidelines do not "account for the length of time a particular defendant refrains from criminal conduct" before committing his first offense).

Mr. Garcia recognizes he committed an offense for which he has no excuse. But given his challenging childhood, his service in defense of our country and the effects it has had upon him, lack of any prior involvement with the criminal justice system, and remorse for his actions, his aberrational conduct on January 6th warrants a downward variance from the advisory guideline range.

Respectfully submitted,

GEORGE T. PALLAS, P.A
Counsel for Gabriel Augustin Garcia
Bar No: FL0108
2420 SW 22nd Street
Miami, FL 33145
305-856-8580
305-860-4828 FAX
george@pallaslaw.com
   By:/s/ *George T. Pallas*
GEORGE T. PALLAS, ESQ.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been electronically filed with the Clerk of Court using CM/ECF system which will send notification of such filing.

By:/s/ *George T. Pallas*