UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Case No. 21-CR-129 (ABJ) |
| v. : | |
| : | |
| GABRIEL AUGUSTIN GARCIA, : | |
| also known as "Gabriel Agustin Garcia," : | |
| : | |
| Defendant. : | |

**GOVERNMENT RESPONSE TO THE DEFENDANT'S "EXHIBITS"**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby files this brief response to the defendant's Sentencing "Exhibits" for Sentencing and will respond in more detail, as necessary, at sentencing tomorrow. In Paragraph 4 of the defendant's "Declaration of Issues of Facts for the Court to Consider," dated and signed on December 3, 2024 (the "Declaration"), the defendant makes various claims that he states are for the purpose of "mitigation" at sentencing. The defendant's Declaration is not mitigating; it is aggravating. The defendant's allegations of misconduct by the government are demonstrably false, and the defendant's denials of his criminal culpability are directly contradicted by the Statement of Facts signed by defendant on October 5, 2023, and affirmed by defendant during the Stipulated Trial November 20, 2023. The Court should take note of the defendant's many distortions of the record when it fashions its sentence.

To begin, the defendant falsely states at Paragraph 4c of his Declaration that the government did not produce CCTV footage of the Crypt in discovery. The government produced the CCTV footage in discovery in July 2021, and the defendant was fully aware of this video prior to making the decision to plead guilty. In fact, on August 7, 2023—two months before the defendant's decision to proceed by Stipulated Trial—defendant presented the government with the

1

same 22-minute video (Def. Sent. Ex. B) that it submitted to the Court as part of sentencing. The government met in person with Garcia's counsel on September 21, 2023, and explained how the defendant's representations in his video, including his explanation as to why he was calling law enforcement "fucking traitors" and yelling, "you ain't stoppin' a million of us" and "Storm this shit!" to law enforcement in the Crypt were not credible and unavailing. The government's proffer materials, which contain still shots from Def. Sent. Ex. B, are submitted herewith at Exhibit H. After the meeting between counsel on September 21, 2023, and with trial scheduled for November 20, 2023, the defendant indicated an interest in resolving the case through a Stipulated Bench Trial. After a period of negotiation on the stipulated facts, the defendant signed the Statement of Offense on October 5, 2023. The Statement of Facts was filed on the docket on October 10, 2023. The defendant presented himself to the Court for the Stipulated Trial on November 20, 2023.

No one forced the defendant to agree to the Stipulated Facts. The defendant could have tested his flimsy theories at a bench or jury trial. But he didn't. He agreed to Stipulated Facts, and he agreed that those Stipulated Facts satisfied the elements set forth in the Statement of Offense. He now disclaims his conduct and his guilt.

Indeed, at the Stipulated Trial, defendant confirmed to this Court that he had (1) received a copy of the statement of facts for the stipulated trial, (2) had read it carefully with his lawyer, (3) had gone over every page of it with his lawyer. Stipulated Trial Transcript (ECF 154) (Nov. 20, 2023) at 16. The Court explicitly asked the defendant, "are you the one who signed this document, which is now on our court's docket at docket 142, accepting the statement of facts – and I'm talking about every page of it – as true?" The defendant responded, "Yes, Your Honor, I have." *Id.* at 16:23 – 17:14. The government then read the entire Statement of Offense.

In his Declaration, the defendant now flatly denies many of the facts that he swore and affirmed to this Court were true and supported by the evidence in the record. Specifically, at his Stipulated Trial, Garcia agreed that he "trespassed onto Capitol Grounds, breached the Capitol building, and joined mobs and confronted officers inside the Capitol in order to disrupt Congress's certification of the Electoral College vote." ECF 149 at ¶ 78; see also *id.* at ¶ 82. He now accuses the government of impropriety for "continu[ing] to state that I was there to stop the certification process." Declaration at ¶ 4g. The defendant's accusation makes no sense—he admitted that he took corrupt and criminal actions to disrupt the certification, and he admitted that he attempted to or did obstruct or impede the certification.

Similarly, in paragraph 4a, the defendant claims in his Declaration that he "walked into the Capitol Building through an open door." This is as misleading as saying that a plane that crashes into a mountain has a "rough landing." The facts show and the defendant admitted that when he arrived at the Capitol, he saw people climbing scaffolding and plumes of smoke in the air. SOF at ¶ 56. The defendant admitted that he climbed up a balustrade toward the building. *Id.* at ¶ 57. The defendant admitted that, before he entered the building, he "saw the broken windows and broken glass on the ground" and that "an alarm was sounding in the doorway." *Id.* at ¶ 61. The defendant admitted—to this Court—that he "understood that his entry into the Capitol was not authorized." *Id.* A video taken by a rioter who entered the Capitol at 2:14:22 p.m. through the same door shows exactly these conditions at the location. Exhibit I.

The defendant now suggests that his entry into the building was lawful. In paragraph 4a of the Declaration, the defendant claims that he was told after entering the Capitol, "you don't have to leave, stay here, and have a conversation with me." This is utter nonsense, and at odds with the defendant's Statement of Offense. The government previously submitted the relevant video at

3

Exhibit D, and the Court will see an outnumbered officer who was attempting to de-escalate a hostile crowd. Exhibit D at 0:45 – 1:05. As the video shows, rioters were telling the officer, "you're not on our side" and "you failed us," and the officer is then asked to "join us." The officer responded, "I can't do that. I have to stand right here, but talk to me [unintelligible]." A rioter responds, "it's too late for that." There is nothing in the exchange or in the context of the situation that told Garcia that he did not "have to leave." The defendant expressly admitted that he knew his entry into the building was unlawful in the Statement of Offense. SOF at ¶ 61. And even if the defendant's false presentation of the officer's statement were accurate, the defendant did not "stay [t]here" and have a conversation with the officer. He moved down the police line, called officers "fucking traitors" and told them, "you ain't stopping a million. You ain't gonna hold a million back. Sorry. You ain't holding a million of us. Sorry." SOF at ¶ 63. And then the defendant rushed through the police line as the rioters surged forward. *Id.* at ¶ 62.

The defendant engages in a similar attempt to whitewash the record when denying that he was "violent."[1] Declaration at ¶ 4h. In his Statement of Offense, Garcia swore and affirmed to this Court that he (i) joined a mob in the Crypt as they pushed through a line of officers and (ii) joined a pack of rioters who were attempting to collectively push through a line of officers in the Rotunda. SOF (ECF 149) at ¶¶ 64, 71; *see also* Gvt Sent. Exs. D and E. In fact, in his covert recording of

---

[1] The defendant asserts falsely that he has been "accused of saying 'Grab him.'" Declaration at 4b. These words do not appear in the Stipulated Facts or the Government's Sentencing Memorandum, and the government does not understand who the defendant is claiming has "accused" him of saying these words. However, the Court can review the video (Gvt. Sent. Ex. D) and come to its own conclusion as to the defendant's veracity.

Likewise, the defendant claims that the government "continues to state it is unclear who I was offering water to." There is no such representation in the Statement of Facts or the Sentencing Memorandum, and there have been no such conversations with defense counsel—because it is not relevant.

Alexandra Pelosi, defendant explains that he knew that the officers were in fear that day. In the video, after telling Ms. Pelosi that he gave Officer J.L. water, the defendant then told her, "I've been in combat so I know that feeling…his buddy's trying to talk to [Officer J.L.] and he's like … he looks like he's out of it." Def. Sent. Ex. C at 9:15 – 9:30. The suggestion that offering water to Officer J.L. while simultaneously taking intentional actions to place him in fear (e.g., calling him a "fucking traitor" and telling him that the officers were not "stoppin' a million of us") somehow minimizes his criminal culpability is ludicrous. There would be nothing redeeming about breaking into a house by shattering a window, stealing priceless art, and then sweeping up the glass before leaving. The defendant's dramatic oscillation between verbal abuse and a fleeting moment of kindness is unsettling, not comforting.

The defendant's tactics here are not new. Since being adjudged guilty on November 20, 2023, the defendant has engaged in efforts to distort the public narrative of his crimes. For example, in July 2024, the defendant gave an interview on a podcast in which he made similar arguments to those in his Declaration. Rumble Podcast (July 3, 2024).[2] The defendant claimed that he "entered through an open door" and an officer told him, "you guys can stay here, but you have to remain peaceful." Podcast at 25:30 – 26:00. The defendant asserted that he was never told to leave the Capitol—"if somebody would have told me, hey you gotta turn around and get your butt out of here, I would have complied. That's the kind of person I am." *Id.* The defendant then went on to address his civil disorder charge and stated that he had been unable to get "a straight answer of the civil disorder [from the government] … what exactly did I do?" *Id.* at 32:50 – 33:05. The defendant then explained, "I wasn't violent, I didn't destroy anything, I was in the rotunda probably 13 minutes…I sat down in that rotunda for 12 minutes 38 seconds until those doors were open, and

---

[2] Available at *https://rumble.com/v55dpan-inside-j6-w-captain-gabriel-garcia.html*

then I just walked out peacefully." *Id.* at 37:00 – 37:41. And just weeks ago, on November 20, 2024, the defendant was quoted in an article stating, "I never heard someone get on the loudspeaker and say, hey, you can't be in here at this time. You're going to be prosecuted and arrested. None of that. There were no verbal commands for you to disperse." Exhibit J.

## CONCLUSION

The defendant's filing serves a purpose, but it is not the one intended by defendant. The Court can see that even after agreeing to facts on which the defendant has been found guilty, the defendant lacks remorse and refuses to accept responsibility for his actions. The Court should take these factors into account when considering a sentence for the defendant.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar Number 481052

By:  /s/ *Jason McCullough*
JASON B.A. MCCULLOUGH
D.C. Bar No. 998006; NY Bar No. 4544953
ASHLEY AKERS
MO Bar #69601
Assistant United States Attorneys
601 D Street, NW
Washington, D.C. 20579
(202) 252-7233 // Jason.McCullough2@usdoj.gov
(202) 353-0521 // Ashley.Akers@usdoj.gov